Ray Charles JOHNSON, Appellant,

v.

The STATE of Texas, Appellee.

No. 12–88–00257–CR.

Court of Appeals of Texas,
Tyler.

Sept. 14, 1990.

Ronald H. Williamson, Sulphur Springs, for appellant.

Frank Long, Sulphur Springs, for appellee.

COLLEY, Justice.

This is an appeal from a conviction for robbery.[1] Punishment was assessed at twenty years in prison.[2] We will affirm.

Appellant presents four points of error. In his first three points of error, appellant challenges the sufficiency of the identification evidence to support the conviction.

■ The first point of error challenges the identification by the victim, Ms. Bobbie Whittington, of appellant as the perpetrator of the robbery. The point raises both the propriety of a pretrial photographic line-up and the in-court identification of appellant. Appellant contends that Whittington's identification of him resulted from an impermissibly suggestive line-up which also tainted her in-court identification.[3]

■ A pretrial identification procedure which is so impermissibly suggestive as to give rise to a substantial likelihood of irreparable misidentification violates due process. *Rogers v. State,* 774 S.W.2d 247, 260 (Tex.Cr.App.1989), *cert. denied,* —— U.S. ——, 110 S.Ct. 519, 107 L.Ed.2d 520 (1989); *Jackson v. State,* 657 S.W.2d 123, 127–28 (Tex.Cr.App.1983); *Medina v. State,* 743 S.W.2d 950, 956 (Tex.App.—Fort Worth 1988, pet. ref'd). It is well established, however, that an in-court identification is admissible, even if an impermissible pretrial procedure was employed, if the record shows that the identification is based upon the witness' prior observation and not upon the improper pretrial identification procedure. *Rogers,* 774 S.W.2d at 260; *Jackson,*

657 S.W.2d at 130. The key to evaluating identification procedures and testimony is reliability.

In the case before us, the appellant timely objected to the victim's testimony regarding the disputed pre-trial photographic line-up and in-court identification. At a hearing outside the presence of the jury, Whittington testified that the man who robbed her stood across the motel desk from her, about two and one-half feet away. The area was "very well lighted" and the perpetrator did not wear any kind of mask or disguise. Nothing obstructed her view of the robber and before he pushed her she was able to get a clear view of him. Whittington identified the appellant in court as the man who robbed her and stated that "I am identifying that man because that's the man that robbed me." In response to questions from the trial court, Whittington unequivocally stated that her identification of the appellant was based upon her observation of him on the date of the offense and not as a result of the photographic line-up shown to her.

The trial court found that Whittington's identification was indeed based upon her observations during the offense and was not tainted in any way by any photographic line-up. The in-court identification testimony was ruled to be admissible.

Before the jury, Whittington testified that on the date of the robbery the appellant came into the motel for money change around 1:00 a.m. He returned about 4:00 a.m. asking for more change. It was during the second visit that the robbery occurred. Whittington again testified that the lighting in the area was bright. She also testified that the robber had on a baseball cap and a tannish windbreaker jacket. *She did not testify before the jury*

---

1. Pursuant to Tex. Penal Code Ann. § 29.02(a)(1) (Vernon 1989).

2. The indictment contained allegations that appellant had been previously convicted of two felony theft offenses. However, the court in its punishment charge submitted only one prior conviction. Because of appellant's plea of true thereto, the jury was instructed to find the allegation to be true. Further, the jury was instructed on the range of punishment applicable

to a first degree felony under the enhancement provisions of Tex. Penal Code Ann. § 12.42(b) (Vernon 1974).

3. As the appellee points out, the crux of appellant's point is somewhat unclear. However, we construe the point liberally, and thus view it as raising both aspects of the identification procedure.

*about her pre-trial identification of appellant based on the photographic line-up.*

The record clearly establishes that Whittington's identification of appellant as the person who committed the robbery on April 1, 1988, resulted from her observation of him before and during the offense. She had the opportunity to observe the man twice at close range, in a well lighted area. She testified that the first time appellant approached her for change, he leaned so far over the counter that it made a cracking noise causing her to look up at him again. She paid enough attention to describe to the police the man's clothing and his appearance. Whittington's observations of appellant were sufficient to serve as an independent origin for her in-court identification of him, without regard to the pre-trial line-up. Her testimony was therefore admissible. The first point of error is overruled.

■ Appellant's second and third points of error go to secondary identification issues relating to evidence of footprints found outside the motel, the identity of the vehicle in which he was riding, and the clothing he was allegedly wearing. In light of Whittington's identification of appellant as the person who robbed her, whether or not the footprints belonged to appellant, the vehicle was accurately described, or the police ever recovered a jacket and baseball cap as described by Whittington, would not affect the outcome. We therefore overrule the second and third points of error.

■ In his fourth point of error, appellant contends that the trial court committed fundamental error by charging the jury on a culpable mental state not alleged in the indictment. The appellee (State) admits that the charge was erroneous, and agrees that the case should be reversed and remanded for a new trial.

The indictment alleged, inter alia, that appellant "intentionally, while in the course of committing theft of property ... caus[ed] bodily injury to Bobby Whittington...." The court in its charge instructed the jury that "if you find from the evidence beyond a reasonable doubt that on or about the 1st day of April, 1988 in Hopkins County, Texas, the defendant, Ray Charles Johnson, while in the course of committing theft of property, and with intent to obtain and maintain control of said property, did then and there *intentionally or knowingly* cause bodily injury to Bobbie Whittington by pushing her to the floor, then you will find the defendant guilty of robbery as charged." (Emphasis added.) The charge defined both "intentionally" and "knowingly" in accordance with TEX. PENAL CODE ANN. § 6.03(a) and (b) (Vernon 1974).[4] Appellant made no objection to this part of the charge at trial.

We agree that the trial court's charge was defective because it authorized a conviction on a basis not alleged in the indictment. *See Garcia v. State*, 640 S.W.2d 939, 941 (Tex.Cr.App.1982); *Wilson v. State*, 625 S.W.2d 331, 333 (Tex.Cr.App. 1981). This conclusion, however, does not end our inquiry. Although neither party addressed this aspect of the point, we are instructed by *Almanza v. State*, 686 S.W.2d 157 (Tex.Cr.App.1984), that when no proper objection is made at trial, reversal is proper "only if the error is so egregious and created such harm that [the defendant] 'has not had a fair and impartial trial'...." *Id.* at 171. In determining whether the erroneous charge caused "egregious harm," we must decide whether the error goes to the very basis of the case, deprived the accused of a valuable right, or

4. § 6.03. Definitions of Culpable Mental States

(a) A person acts intentionally, or with intent, with respect to the nature of his conduct or to a result of his conduct when it is his conscious objective or desire to engage in the conduct or cause the result.

(b) A person acts knowingly, or with knowledge, with respect to the nature of his conduct or to circumstances surrounding his conduct when he is aware of the nature of his conduct or that the circumstances exist. A person acts knowingly, or with knowledge, with respect to a result of his conduct when he is aware that his conduct is reasonably certain to cause the result.

vitally affected his defensive theory. *Id.* 686 S.W.2d at 172. In so doing, we must look to the entire record.

The evidence regarding the conduct of appellant that caused Whittington's injuries consists of her testimony that when she bent over to open the change drawer, "he pushed me. Caught me right here and knocked me into the wall back behind the desk and I fell to the floor.... I hit the wall with my shoulder area and upper part of my back then hit the floor on my hip...." According to her testimony, she received a bruise on her hip and a pinched nerve in her shoulder. There was no other evidence concerning the actions of appellant which allegedly caused Whittington's injury.

We are not persuaded that appellant was deprived of a "fair and impartial trial" by the charge error, considering *Almanza's* standard for review of unobjected to charge errors, or, for that matter, in considering the standard provided by TEX.R. APP.P. 81(b)(2). We perceive no "egregious" harm resulting to appellant from that error. As applied to the facts of this case, the distinction between "intentionally" and "knowingly," as those terms are defined in TEX. PENAL CODE ANN. § 6.03(a) and (b), does not justify a conclusion that the error deprived appellant of a valuable right or adversely affected his defensive theory. An appraisal of the entire record reveals that appellant's sole defensive theory at trial was simply that he was not there and was misidentified by the eye-witness victim. Certainly, the charge error did not prejudice that defense.

It is undisputed that the robber pushed the victim against the wall behind her desk, causing her to fall to the floor. Other portions of the victim's testimony show that she sustained "bodily injury," as that term is defined in TEX. PENAL CODE ANN. § 1.07(a)(7) (Vernon 1974). As earlier stated, neither party raised or discussed the harm analysis adopted by *Almanza;* in fact, the State conceded, in our opinion, gratuitously, that the error alleged by appellant under his fourth point constitutes reversible error. In any event, it is axiomatic that this Court is not bound by the State's concession. Moreover, both appellant and the State rely on pre-*Almanza* case law involving so-called "fundamental error," and thus advocate a return to the automatic reversal for charge errors like the one here under consideration. Two of the cases relied on, *Wilson v. State*, 625 S.W.2d 331 (Tex.Cr.App.1981), and *Hutchins v. State*, 590 S.W.2d 710 (Tex.Cr.App. 1979), involved the wrongful inclusion in the charge of the lesser culpable mental state of "recklessly." For obvious reasons, the cases cited are not only inapposite, but archaic as well.

Under the facts shown by the record, respecting the infliction of bodily injury upon the victim, whether appellant had a "conscious objective or desire to ... cause the result [injury to the victim]" or was "aware that his conduct [was] reasonably certain to cause the result" is of no moment. The inclusion in the charge of the culpable state of "knowingly" does not, under the circumstances in this case, lessen the State's burden of proof or otherwise harm appellant. Any hypertechnical or theoretical distinction between the two equally culpable mental states of "knowingly" and "intentionally,"[5] as applied here, in no way prevented appellant from receiving a fair trial at the hands of an impartial judge and jury. In our opinion, the record shows that he received just such a fair trial. He received only the maximum punishment for a *second degree felony*, despite the fact that the State alleged and proved one prior conviction for enhancement purposes, or to expand the range of available punishment to that prescribed for a first degree felony. *See* Tex. Penal Code Ann. § 12.42(b) (Vernon 1974).

---

5. We are aware that TEX. PENAL CODE ANN. § 6.02 (Vernon 1974) ranks "knowingly" below "intentionally" in degree of culpability, but we are also aware that the authors of the Practice Commentary that follows § 6.03, expressed the opinion that in cases like the present one, "the distinction between knowingly and intentionally is narrow...." The commentators arrived at that opinion because as they said, "in terms of blameworthiness between one who wills [or intends] a particular result and one who is willing for it to occur ...[,]" there is little difference.

Because appellant was not "egregiously" harmed by the error, we overrule his fourth point of error, and affirm the judgment.