**Gene WILMETH, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 12–89–00171–CR.**

Court of Appeals of Texas,
Tyler.

April 30, 1991.

Sam Hicks, Palestine, for appellant.

Jeffrey Herrington, Dist. Atty., Palestine, for appellee.

BILL BASS, Justice.

A jury convicted appellant of the offense of robbery and assessed punishment at 20 years' imprisonment and a $5,000 fine. On appeal, appellant raises four points of error. We will affirm the conviction.

The undisputed facts of this case are as follows. In the early morning hours of July 16, 1988, appellant entered a convenience store. Mrs. Melissa Driver, the complaining witness and sole person on duty at the store, asked appellant if she could help him. Appellant said nothing but selected a piece of bubble gum and placed the gum and a dime on the front counter. When Mrs. Driver opened the register to ring up the sale, appellant placed his hands inside the register drawer. Surprised, Mrs. Driver grabbed appellant's wrists and said "What are you doing?" Appellant did not reply, but clenched his fists and looked hard at Mrs. Driver. Frightened, Mrs. Driver released her grip on appellant who quickly grabbed two $10.00 dollar bills and a $20.00 bill then sprinted out the door. Shortly thereafter, police apprehended appellant as he attempted to escape on his motorcycle.

■ Appellant's first point of error alleges that the evidence was insufficient to prove the robbery element of placing the complaining witness in fear of imminent bodily injury or death. Appellant's second point of error alleges that the evidence was insufficient to prove that appellant intentionally placed the complainant in fear. By his third point of error, appellant contends that the evidence was insufficient to prove that appellant threatened the complainant. We will address these three sufficiency points together.

The elements for the offense of robbery are as follows:

(a) A person commits an offense if, in the course of committing theft as defined in Chapter 31 of this code and with intent to obtain or maintain control of the property, he:

(1) intentionally, knowingly, or recklessly causes bodily injury to another; or

(2) intentionally or knowingly threatens or places another in fear of imminent bodily injury or death.

§ 29.02(a) of the TEX.PENAL CODE ANN. (Vernon 1989).

The critical inquiry in reviewing the sufficiency of the evidence to support a criminal

conviction is to determine whether after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 320, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); *Dickey v. State*, 693 S.W.2d 386, 387 (Tex.Cr.App.1984). In order to prove the offense of robbery, there must have been actual or threatened violence to the person, or intimidation of such a nature that the threatened or injured party was put in fear. *Jones v. State*, 467 S.W.2d 453 (Tex.Cr.App.1971); *Green v. State*, 567 S.W.2d 211, 213 (Tex.Cr.App.1978). "The fear must be of such nature as in reason and common experience is likely to induce a person to part with his property against his will." *Green*, 567 S.W.2d at 213 *quoting Jones*, 467 S.W.2d 453; *Franklin v. State*, 702 S.W.2d 241, 244 (Tex.App.—Houston [1st Dist.] 1985, no writ).[1]

In the instant case, appellant was described as a white male, approximately five feet-eight inches to five feet-ten inches tall, and was "husky-built." Mrs. Driver was described as a "not very tall" woman in her late thirties. Mrs. Driver testified as follows with regard to the incident:

Q. (By the State's attorney) All right. Now, he put his hands in the cash drawer. Were you standing by the cash register?

A. Yes, sir, I was behind it.

Q. Okay. Then what happened?

A. I grabbed his wrists and asked what he was doing.

Q. Was there any response at that time?

A. No verbal response, but when I grabbed his wrists I felt his hands clench into a fist, a clench, and I looked into his eyes at the same time. I said, "What are you doing," and I could tell that if I didn't back away that I was going to be hurt.

Q. What was your reaction to his actions?

A. I was scared to death.

Q. What did he do that scared you?

A. The clenching of his fist, and then the look in his eye.

Q. Did he have any weapon in his hands or anything like that?

A. No, sir.

. . . . .

Q. You said something about his facial reaction?

A. Okay. I said, "What are you doing." When I said that I looked up and I felt his fists clench at the same time I looked up and I could see that he was going to come over the counter after me or whatever.

Q. Did it appear he made some move toward you?

A. No, sir, other than the fists and I backed up.

. . . . .

Q. Okay. When he came towards you and clenched his fists as you testified what was your reaction?

A. I was frightened. I was very scared. I felt like that if I did not allow him to take what he wanted that I was going to be behind the counter and someone would have to find me there.

. . . . .

Q. Mrs. Driver, describe the look that he [appellant] did give you?

A. It was a look of "if you do not allow me to do what I wish to do I'm going to do it anyway." The eyes became enlarged and very set on me and on my face.

Q. Take your time?

A. I'm sorry, it's hard to recall.

---

1. The *Green* opinion also cites *Lightner v. State*, 535 S.W.2d 176 (Tex.Cr.App.1976) which held that the definition of "robbery" in the 1974 Penal Code was broader than the definition in Article 1408 of the 1925 Code (as cited in *Jones*). Unlike the 1974 Penal Code definition of "robbery," Article 1408 required that the injury or threat of injury be *antecedent* to the robbery. The *Lightner* decision, however, did not eliminate the requirement that the "fear induced be of such a nature as in reason and common experience is likely to induce a person to part with his property against his will."

Q. If you need some time take it. Do you need some time, Mrs. Driver?

A. No, I'm okay. And a look of "you better back off".

Q. All right. Is this what prompted you to be afraid?

A. Yes, sir, that's when I backed off and said take it.

The State cites several cases standing for the proposition that threatened violence is sufficient to place a victim in fear of imminent bodily harm or death. In the majority of these cases, the accused made verbal threats or led his or her victims to believe that he or she was armed. *See Green v. State*, 567 S.W.2d at 212–213 (*appellant threatened to cave in complainant's head*); *Emerson v. State*, 476 S.W.2d 686, 687 (Tex.Cr.App.1972) (*appellant's action in leading the complainant to believe he had a gun by placing his hand in the pockets of his sweater which contained a bulge, coupled with his command to store employee to fill sack with money was sufficient to place employee in fear of bodily injury or fear for his life*); *Johnson v. State*, 541 S.W.2d 185 (Tex.Cr.App. 1976) (*appellant was observed with a gun in his hand at supermarket while customers around him sought shelter under store counters*); *Cranford v. State*, 377 S.W.2d 957, 958 (Tex.Cr.App.1964) (*accused pulled coat back reaching as if going for a gun*); *Ector v. State*, 634 S.W.2d 69 (Tex.App.—Fort Worth 1982, pet. ref'd) (*appellant stabbed store owner with knife, but did not make any verbal threats*). None of these cases goes so far as to infer the requisite fear from a menacing glance and a hand gesture; however, we find that given the appropriate surrounding circumstances, such actions could cause a person to relinquish his or her control over property by placing him or her in fear of imminent bodily injury or death.

■ "Fear must arise from the conduct of the accused rather than the mere temperamental timidity of the victim." *Cranford v. State*, 377 S.W.2d 957 (Tex.Cr.App. 1964). The evidence shows that Mrs. Driver relinquished control of the cash register because she feared imminent bodily injury.

Furthermore, given the circumstances surrounding the offense, appellant's conduct was such that in *reason and common experience* would be likely to induce a person to part with his property against his will. In the instant case, Mrs. Driver had been working the graveyard shift alone at a convenience store where she was responsible for the cash register. Appellant was huskily built, and Mrs. Driver was small. Under these circumstances, Mrs. Driver acted bravely when she grabbed appellant's wrists, and appellant's resultant glaring look and clenching fists understandably frightened her. Had Mrs. Driver failed to release her grip on appellant, reason and common experience suggest that he would have harmed her in order to take the money. He had the motive, means and opportunity to do so, and no one would have been present to witness the altercation or to render aid.

The trier of fact has the opportunity to observe the demeanor of the witnesses on the stand and to judge their credibility and the weight to be given their testimony. *Jackson v. State*, 672 S.W.2d 801, 804 (Tex. Cr.App.1984). Furthermore, the intent of an accused can be inferred from his acts, words and conduct. *Dues v. State*, 634 S.W.2d 304 (Tex.Cr.App.1982); *Gutierrez v. State*, 672 S.W.2d 633 (Tex.App.—Corpus Christi 1984), affirmed as reformed 741 S.W.2d 444 (Tex.Cr.App.1987). In the instant case, the jury had an opportunity to observe Mrs. Driver and appellant in the courtroom as well as hear the testimony presented. The jury believed that appellant's actions were calculated to and did invoke the requisite fear. While admittedly a close question, we find that under the circumstances of the instant case, appellant's menacing glance and clenched fists constituted intentionally threatening conduct sufficient to place Mrs. Driver in fear of imminent bodily injury, a fear that in reason and common experience would have caused her to part with her property. Appellant's first three points of error are overruled.

■ Appellant's fourth and final point of error alleges that the trial court commit-

ted fundamental error by including an application of language in the court's charge regarding the culpable mental state of "knowingly" because that theory was not included in the indictment. Since no objection to the charge was made at trial, the error is reversible only if it was so "egregious" that appellant was deprived of a "fair and impartial trial." *Almanza v. State*, 686 S.W.2d 157, 171 (Tex.Cr.App. 1984). "[The] actual degree of harm must be assayed in light of the entire jury charge, the state of the evidence, including the contested issues and weight of probative evidence, the argument of counsel and any other relevant information revealed by the record of the trial as a whole." *Almanza*, 686 S.W.2d at 171.

The pertinent portion of the indictment in the instant case reads as follows:

GENE EDWARD WILMETH ... did then and there intentionally, while in the course of committing theft of property and with intent to obtain and maintain control of said property, threaten and place Melissa Driver in fear of imminent bodily injury and death, by clenching his fists and threatening Melissa Driver with his actions;

The portion of the court's charge of which appellant complains states:

Our law provides that a person commits the offense of robbery if, in the course of committing theft, as that term is hereinafter defined, and with intent to obtain and maintain control of property of another, he *intentionally or knowingly threatens* or places another in fear of imminent bodily injury or death.

(Emphasis added.)

The charge also contains definitions of both "intentionally" and "knowingly."

In *Johnson v. State*, 797 S.W.2d 330, 332 (Tex.App.—Tyler 1990, no pet.) we were faced with a nearly identical issue.[2] In holding that appellant had not been deprived of "a fair and impartial trial", we

noted that, although defective, the charge contained no egregious harm resulting from the error.

As applied to the facts of this case, the distinction between 'intentionally' and 'knowingly,' as those terms are defined in TEX.PENAL CODE ANN. § 6.03(a) and (b), does not justify a conclusion that the error deprived appellant of a valuable right or adversely affect his defensive theory ... Under the facts shown by the record, respecting the infliction of bodily injury upon the victim, whether appellant had a 'conscious objective or desire to ... cause the result [injury to the victim]' or was 'aware that his conduct [was] reasonably certain to cause the result' is of no moment. The inclusion in the charge of the culpable state of 'knowingly' does not, under the circumstances in this case, lessen the State's burden of proof or otherwise harm appellant. Any hypertechnical or theoretical distinction between the two equally culpable mental states ... as applied here, in no way prevented appellant from receiving a fair trial at the hands of an impartial judge and jury.

We believe our reasoning in *Johnson* is equally applicable to the instant case. Appellant's menacing glance and clenched fists were calculated to frighten Mrs. Driver into releasing his wrists. Under the facts of this case, the distinction between whether this result was appellant's "conscious objective or desire" or whether he was "aware that his conduct [was] reasonably certain to cause the result" is too subtle to constitute egregious error in an *Almanza* fundamental error analysis.

Appellant's counsel repeatedly used the terms "knowingly" and "intentionally" throughout closing argument interchangeably. Moreover, we have held that the evidence was sufficient to show that appellant *intentionally* threatened Mrs. Driver. Appellant's fourth and final point of error is overruled.

**2.** Appellant alleged that the trial court had committed fundamental error by charging the jury on a culpable mental state not alleged in the indictment. The indictment alleged that the accused had "intentionally, while in the course of committing theft of property ... caus[ed] bodily injury ...," and the court's charge alleged that the accused "did then and there *intentionally or knowingly* cause bodily injury ..."

The judgment of the trial court is affirmed.