In The



Court of Appeals



Ninth District of Texas at Beaumont



____________________



NO. 09-02-524 CR


____________________



FREDDIE D. BRADLEY, Appellant



V.



THE STATE OF TEXAS, Appellee






On Appeal from the 88th District Court


Hardin County, Texas


Trial Court Cause No. 16,177






OPINION


 A jury convicted appellant of robbery. See Tex. Pen. Code Ann. § 29.02(a)(2)
(Vernon 2003). The trial court, finding an enhanced punishment allegation true, assessed
punishment at confinement in the Institutional Division of the Texas Department of Criminal
Justice for a term of fifty years. Appellant says the evidence is legally and factually
insufficient to sustain the conviction. 

 In reviewing the legal sufficiency of the evidence to support a conviction, we are to
view the evidence in the light most favorable to the verdict. See Cardenas v. State, 30
S.W.3d 384, 389-90 (Tex. Crim. App. 2000). The critical inquiry is whether, after so
viewing the evidence, any rational trier of fact could have found the essential elements of the
crime beyond a reasonable doubt. Id. This standard gives full play to the responsibility of
the trier of fact to resolve conflicts in the testimony, to weigh the evidence, and to draw
reasonable inferences from basic facts to ultimate facts. Jackson v. Virginia, 443 U.S. 307,
319, 99 S.Ct. 2781, 61 L.Ed.2d 560, 573 (1979). The verdict may not be overturned unless
it is "found to be irrational or unsupported by . . . the evidence . . . ." Matson v. State, 819
S.W.2d 839, 846 (Tex. Crim. App. 1991)(quoting Moreno v. State, 755 S.W.2d 866, 867
(Tex. Crim. App. 1988)). 

 In reviewing the factual sufficiency of the evidence to support a conviction, we are
to view all the evidence in a neutral light. Johnson v. State, 23 S.W.3d 1, 6-7 (Tex. Crim.
App. 2000); Clewis v. State, 922 S.W.2d 126, 129 (Tex. Crim. App. 1996). We must
determine whether a neutral review of all the evidence demonstrates that the proof of guilt
is so obviously weak as to undermine confidence in the verdict, or the proof of guilt,
although adequate if taken alone, is greatly outweighed by contrary proof. Johnson, 23
S.W.3d at 11. In performing this review, we are to give due deference to the factfinder's
determinations. Id. at 8-9; Clewis, 922 S.W.2d at 136. We may find the evidence factually
insufficient only where necessary to prevent manifest injustice. Johnson, 23 S.W.3d at 9, 12;
Cain v. State, 958 S.W.2d 404, 407 (Tex. Crim. App. 1997). 

 Appellant contends the record contains no legally or factually sufficient evidence that
the victim, M.B., was placed in fear of imminent bodily injury or death. "The general,
passive requirement that another be 'placed in fear' cannot be equated with the specific,
active requirement that the actor 'threaten another with imminent bodily injury.'" Williams
v. State, 827 S.W.2d 614, 616 (Tex. App.--Houston [1st Dist.] 1992, pet. ref'd); see also Tex.
Pen. Code Ann. § 29.02(a)(2) (Vernon 2003); Tex. Pen. Code Ann. § 22.01(a)(2) (Vernon
Supp. 2004). Under the "placed in fear" language, the factfinder may find that an individual
perceived fear in a situation where the accused made no actual threats. Wilmeth v. State, 808
S.W.2d 703, 706 (Tex. App.--Tyler 1991, no pet.) (jury may find requisite fear from
menacing glance and clenching of fist). 

 "The fear must be of a nature as in reason and common experience is likely to induce
a person to part with property against [her] will." Green v. State, 567 S.W.2d 211, 213 (Tex.
Crim. App. 1978)(quoting Jones v. State, 467 S.W.2d 453, 454 (Tex. Crim. App. 1971)). 
The victim's fear may not arise merely from some temperamental timidity, but must result
from some conduct of the perpetrator. Devine v. State, 786 S.W.2d 268, 271 (Tex. Crim.
App. 1989). Fear-causing conduct can take many forms. See Wilmeth, 808 S.W.2d at 706.

 In the instant case, M.B. was called by the State and by the defense in their respective
cases-in-chief. She testified that at about 5:40 a.m. on December 23, 2001, appellant entered
the convenience store where M.B. was working. At that moment, M.B., who was cleaning
the hot dog turner, was positioned away from the check-out counter. She stated that
appellant entered the store and she immediately recognized him by his street name "Big
Boy." Her description of the events that transpired is as follows: 

 Q.[State] What happened next?


 A.[M.B.] When I turned around, I saw him. He had -- he was coming in the
door. He had his right hand in his pocket of his sweater pullover vest thing.


 Q. Is that one of those like sweatshirt type of pullover deals?


 A. With the pockets in the front, pullover. And when he walked in the door,
he turned and looked straight at me with his hand still in his pocket; and then
he took his hand out of his pocket and walked over to the counter and jerked
twice on the watch display, jerked it off the counter, and ran out of the store. 


M.B. also testified that when appellant entered the store he was wearing "an orange ski mask
over half of his face." M.B. further related that, notwithstanding his wearing a ski mask over
half of his face, she recognized appellant "[b]ecause he came into the store just about every
single night I worked." During the entire incident in question, appellant never spoke. While
M.B. never saw a weapon in appellant's possession, she stated that he removed his hand from
his pocket as he entered the store, and she felt he possessed a weapon. She testified she was
scared of appellant, and what he might do, on the morning in question. 

 M.B. described a prior shoplifting incident she witnessed when appellant placed two
cans of beer in his pockets and left the store without paying. M.B. testified that when she
pointed out the prior theft to her coworker, she was told that the coworker, being afraid of
appellant, was going to do nothing. M.B. testified about another time when M.B. was
working in the store and appellant became angry and cursed because the store did not carry
"Mad Dog 20/20." From having witnessed these prior acts by appellant, M.B. testified she
developed a fear of appellant, that culminated in her being placed in fear when he entered the
store on the morning in question. The State introduced a video tape depicting the incident
in question. 

 Under the appellate standard for legal sufficiency, we find the record evidence
sufficient to support the jury's verdict. M.B. testified appellant entered the store in the early-morning hours; he was wearing a ski mask that partially obscured his face, had his hand in
his pocket, and looked straight at M.B. M.B. felt that there was a weapon, and that if she had
been at the cash register he would have killed her. His behavior on the morning in question,
considering his past behavior in the store, placed her in fear.

 We recognize that Devine held that "[t]he threat or conduct placing another in fear
must be of imminent bodily injury." Devine, 786 S.W.2d at 270 (footnote omitted) (emphasis
in original). However, when considering whether there was legally sufficient evidence to
prove the victim was "placed in fear" of imminent bodily injury, the Devine Court did not
explicitly disapprove of a reviewing court's taking into account the victim's past experience
with the defendant. Appellant's brief does not rely on or even cite Devine, and does not
argue the "imminent" issue. In the instant case, M.B.'s past experiences with appellant
helped place appellant's conduct on the morning in question in context for the jury, so that
the jury could make reasonable inferences from his conduct on the day in question. Issue one
is overruled.

 We also find the evidence to be factually sufficient to support the jury's verdict. 
Appellant attempted to use the video tape to cast doubt on M.B.'s testimony, particularly on
the issue of her being scared of appellant. He questioned whether appellant had his right
hand in his pocket. The total encounter was brief, with M.B. even agreeing it all happened
"pretty fast." However, M.B. was insistent that appellant placed her in fear on the morning
in question. Even with any possible discrepancies between the events depicted on the video
tape and the events described by M.B., we cannot say that evidence in support of the jury's
implied finding that M.B. was placed in fear is so obviously weak as to undermine our
confidence in the verdict, or is greatly outweighed by any contrary proof. Johnson, 23
S.W.3d at 11. Appellant argues that his actions could not reasonably be perceived as
threatening, and suggests that M.B.'s fear was a product of her inability to hide the theft of
relatively expensive merchandise from her employer. After prior exhibitions of intimidating
behavior, at 5:40 a.m. on the morning in question, appellant looked the clerk in the eye, then
silently rushed into the store, wearing a ski mask, and took a display of watches. Although
aware of the clerk's presence in the store and her familiarity with him, appellant entered the
store with obvious intent to commit a theft. His behavior, in context, may rationally be
perceived as threatening to the person selling the merchandise. We overrule issue two. 

 We affirm the judgment and the sentence of the trial court. 

 AFFIRMED. 


 _________________________________

 DAVID B. GAULTNEY

 Justice


Submitted on November 10, 2003

Opinion Delivered January 28, 2004

Do Not Publish

DISSENTING OPINION


 I disagree with the majority's finding the evidence sufficient to support appellant's
conviction for robbery. The slow-motion videotape shows that appellant walked into the
store with his left hand in his pocket and his right hand by his side. Immediately upon
entering, appellant removed his left hand from his pocket and proceeded directly to the
counter. Bradley picked up the watch display, turned, and left the store. The other videotape
shows the entire incident was over in a matter of seconds. 

 As the majority opinion notes, M.B. testified she saw appellant remove his hand from
his pocket as he entered the store and never saw a weapon in his possession. Nevertheless,
as the majority recounts, "she felt he possessed a weapon." M.B. testified appellant had
shoplifted in the past and used foul language but there is no evidence appellant ever carried
a weapon into the store, and no evidence he ever threatened anyone in the store. 

 There is nothing in the record to show M.B. was placed in fear of imminent bodily
injury or death by any threat or action on the part of appellant. M.B. was afraid of appellant
by his very presence. I am aware of no authority in the State of Texas, and the majority cites
none, whereby shoplifting is transformed into robbery because a store clerk is afraid of a
certain customer - a customer who committed no act of aggression or made any threats, on
the day in question or in the past. There is simply no evidence M.B.'s fear resulted from
anything other than her own feelings rather than some conduct of appellant. See Devine v.
State, 786 S.W.2d 268, 271(Tex. Crim. App. 1989); see also In re S.B., 117 S.W.3d 443, 446
(Tex. App.--Fort Worth 2003, no pet.). Accordingly, I would sustain appellant's first issue
and find the evidence legally insufficient to sustain his conviction.



 ___________________________

 DON BURGESS

 Justice


Dissent Delivered

January 28, 2004


Before McKeithen, C.J., Burgess, and Gaultney, JJ.