# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

NO. 03-04-00288-CR
NO. 03-04-00289-CR

**Royry Glenn Tones, Appellant**

**v.**

**The State of Texas, Appellee**

**FROM THE DISTRICT COURT OF BELL COUNTY, 27TH JUDICIAL DISTRICT
NOS. 54824 & 54832, HONORABLE MARTHA J. TRUDO, JUDGE PRESIDING**

## M E M O R A N D U M   O P I N I O N

A jury convicted appellant Royry Glen Tones of two counts of aggravated robbery and sentenced him to seventy-five years in prison. *See* Tex. Pen. Code Ann. § 29.03 (West 2003). Tones contends on appeal that the trial court erred by overruling his motion for an instructed verdict. Tones also raises several issues in a *pro se* brief. We affirm the conviction.

## Background

Tones and an accomplice, Edward Montgomery, committed several robberies of fast-food restaurants on the evening of March 3, 2003, in Killeen, Texas. One of the two would rob the restaurant armed with a shotgun while the other waited in the car. The two traded roles in the robberies, but each wore the same coat, gloves, hat, and mask when it was his turn to rob a restaurant. Because Tones's claim focuses only on whether the State offered any evidence that the

victims named in the two indictments were placed in "fear of imminent bodily injury or death," *see id.* § 29.03(a)(3), we will limit our description of the facts to a discussion of the events that took place during the two robberies in question.

The first charge of aggravated robbery concerned a robbery of the cashier in a Subway restaurant. Subway employee Sylvia Martinez testified that she was washing dishes when she saw someone run into the restaurant wearing a long black coat and a mask and carrying a gun. She testified that the robber asked for the money in the register, but the startled cashier, Donald Hall, couldn't get the register open. Martinez testified that she went over to the counter, opened the register, and put the money on the counter. The robber took the money, told Hall to get on the ground, and then ran out the back door. Martinez explained that during the robbery, she dialed 911 on the restaurant's cordless phone and left the phone under a table. Once the robber left, she picked up the phone and informed the 911 operator that the restaurant had been robbed. A tape recording of the 911 call was introduced into evidence and played to the jury.

Subway customer Joshua Boswell witnessed the robbery while seated at the restaurant. He testified to what he saw:

> And then a man walked in with, with a shotgun, all dressed in pretty much black, black trench coat, mask, skull cap, black gloves, and you know, he walked up to the front and he demanded, you know, to open the register. And the gentleman behind the counter was actually kind of struggling with the register and then he ordered the gentleman to step back. And at that time the gunman actually jumped over the counter and then he also brought the other co-worker who was actually kind of in the back part of the—back area, I guess washing dishes or something, and she opened the register.

* * *

2

> I didn't want to make any noise or whatnot, just watching this whole thing happen, and then the man got the money and took off to the back.

The entire robbery was captured on a security video, and the videotape was introduced into evidence and viewed by the jury.

The last of the robberies committed by Tones and Montgomery formed the basis of the second charge of aggravated robbery. In this robbery of another Subway restaurant, Montgomery was the gunman. Montgomery was arrested as he left the building and cooperated with the prosecution. At trial, Montgomery testified that he entered the restaurant wearing the coat, gloves, hat, and mask and had placed the shotgun down the leg of his pants. He described his actions in the restaurant:

> And so I went through the front door. And once again, you know I pulled my coat back so the guy could see the gun and I was like, man, just give me the money.

Montgomery explained that the gun was not entirely concealed and that "the end toward where the trigger was, some of that was showing." Montgomery then testified that "the guy" gave him the money from the register and that, when he walked out, the police were outside.

Steven Huerta, an assistant manager at the Subway restaurant, also testified that a man came into the restaurant dressed in a black trench coat, white sneakers, and a hat. The robber asked for all of the money, and the employee at the register complied. Huerta identified the employee at the register as Gary Hall. Huerta testified that he did not see a gun until after the robber had been arrested, but that he was concerned someone might be hurt and that he was afraid for his life during the robbery.

3

**Discussion**

Tones contends that the trial court erred by overruling his motion for a directed verdict. The State responds with a novel argument that because the State has the right to a jury trial, a trial court lacks the authority to grant a directed verdict and, therefore, there was no error. *See State ex rel. Curry v. Carr*, 847 S.W.2d 561, 562 (Tex. Crim. App. 1992) (State must consent to waiver of jury trial). However, the court of criminal appeals has repeatedly held that we are to treat an issue complaining of a court's failure to grant a motion for directed verdict as a challenge to the legal sufficiency of the evidence. *See Williams v. State*, 937 S.W.2d 479, 482 (Tex. Crim. App. 1996); *Cook v. State*, 858 S.W.2d 467, 470 (Tex. Crim. App. 1993); *Madden v. State*, 799 S.W.2d 683, 686 (Tex. Crim. App. 1990) ("A challenge to the trial judge's ruling on a motion for an instructed verdict is in actuality a challenge to the sufficiency of the evidence to support the conviction.").

When reviewing legal sufficiency, we view the evidence in the light most favorable to the judgment and determine whether any rational trier of fact could have found the elements of the offense beyond a reasonable doubt. *See Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979); *Moff v. State*, 131 S.W.3d 485, 488 (Tex. Crim. App. 2004); *Curry v. State*, 30 S.W.3d 394, 406 (Tex. Crim. App. 2000). We resolve inconsistencies in the testimony in favor of the verdict. *Curry*, 30 S.W.3d at 406; *Moreno v. State*, 755 S.W.2d 866, 867 (Tex. Crim. App. 1988). We do not examine the fact-finder's weighing of the evidence but merely determine whether there is evidence supporting the judgment. *Clewis v. State*, 922 S.W.2d 126, 132 n.10 (Tex. Crim. App. 1996).

Tones contends that the State failed to elicit any evidence that the victims listed in the indictments were placed in "fear of imminent bodily injury or death." *See* Tex. Pen. Code Ann. § 29.03(a)(3). He argues that, because placing the victim in fear of imminent bodily injury or death is an element of the offenses charged, no reasonable jury could have found him guilty. Tones relies primarily on the fact that neither victim named in the indictments testified at trial. Thus, he contends that there was no direct evidence that the victims were placed in fear of imminent bodily injury or death.

However, the circumstances of the offense may demonstrate that the victim was "placed in fear." *Knight v. State*, 868 S.W.2d 21, 24 (Tex. App.—Houston [1st Dist.] 1993, pet. ref'd); *see Williams v. State*, 827 S.W.2d 614, 616 (Tex. App.—Houston [1st Dist.] 1992, pet. ref'd); *Willmeth v. State*, 808 S.W.2d 703, 706 (Tex. App.—Tyler 1991, no pet.). We determine whether the words and conduct of the accused were sufficient to place a reasonable person in the victim's circumstances in fear of imminent bodily harm or death. *Welch v. State*, 880 S.W.2d 225, 226 (Tex. App.—Austin 1994, no pet.). Here, the jury heard considerable evidence from which it might reasonably conclude that the named victims were placed in fear of bodily injury or death. With regard to the first robbery, Tones entered the restaurant brandishing a shotgun and demanded the money in the cash register. His actions were described by two witness and were recorded on video and through a 911 phone call. The videotape of the robbery clearly depicts Tones pointing the shotgun at the cashier, Donald Hall. Subway employee Martinez described Hall as too startled to open the cash register. Based on this record, we conclude that a reasonable jury could have found that Hall was placed in fear of imminent bodily injury or death.

5

The second robbery was described by Montgomery and Huerta, the assistant manager of the restaurant. Montgomery testified that he lifted his jacket and showed the shotgun to "the guy" and that "the guy" gave him the money. Huerta testified that it was Gary Hall, the victim named in the indictment, that handed Montgomery the money. Although Huerta may not have seen the gun, it is clear from Montgomery's testimony that he showed the gun to Hall. We conclude that a reasonable jury could have found that Montgomery's display of the partially concealed shotgun placed the victim in fear of imminent bodily harm or death. *See Heathcoat v. State*, 709 S.W.2d 303, 304-05 (Tex. App.—San Antonio 1986, no pet.) (evidence sufficient to show victim placed in fear of imminent bodily harm or death when appellant revealed pistol tucked into waistband). Because the evidence was sufficient to show that the named victims in both robberies were placed in fear of imminent bodily injury or death, we overrule Tones's legal sufficiency issue.

### *Pro Se* **Brief**

Tones raises a number of issues in a *pro se* brief. As the brief acknowledges, an appellant is not entitled to hybrid representation. *Patrick v. State*, 906 S.W.2d 481, 498 (Tex. Crim. App. 1995). Nevertheless, in the interest of justice, we have reviewed the brief and find it raises no issues of merit.[1]

---

[1] We note that the record on direct appeal is generally insufficient for a determination of claims of ineffective assistance of counsel and violations of *Brady v. Maryland*, and that a petition for a writ of habeas corpus is the best vehicle to advance such claims. *See Rylander v. State*, 101 S.W.3d 110, 111 (Tex. Crim. App. 2003).

**Conclusion**

Having overruled all of Tones's issues, we affirm the conviction.

_____

Bea Ann Smith, Justice

Before Chief Justice Law, Justices B. A. Smith and Puryear

Affirmed

Filed:   March 31, 2005

Do Not Publish