

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-12-00027-CR

---

MARC ALEXANDER GARCIA                                    APPELLANT

V.

THE STATE OF TEXAS                                              STATE

----------

### FROM THE 371ST DISTRICT COURT OF TARRANT COUNTY
### TRIAL COURT NO. 1227488D

----------

## MEMORANDUM OPINION[1]

----------

### Introduction

A jury found Appellant Marc Alexander Garcia guilty of robbery by threats and assessed his punishment at 18 years' confinement, and the trial court sentenced him accordingly.[2]   Appellant claims that the trial court erred by

---

[1]*See* Tex. R. App. P. 47.4.

[2]Appellant's punishment was enhanced by a prior robbery conviction.

(1) limiting his cross-examination of the complainant and (2) not instructing the jury on a lesser-included offense and that (3) the evidence is insufficient to support the verdict. We affirm.

**Facts**

Amberly Herrell was the sole employee working at the 7-Eleven on the corner of Las Vegas Trail and the West Freeway in Fort Worth when Appellant walked in late one night in January 2011. She greeted him when she heard the "beeping noise" that indicated that the door had opened, and then she returned to stocking merchandise.

The store is equipped with three security cameras inside and two outside. State's Exhibit 40 is a video recording showing what Appellant did to Amberly while he was in the store.

Appellant approached her from behind, grabbed her shirt and the skin on her back, and shoved her from the stockroom, to the office, and toward the front of the store while pulling her shirt over her head.

When he asked her about the safe, she replied that she could not open it. So he ordered her to open the cash register, but when she did, instead of taking the money, he picked her up and forced her back into the office, where he bound her wrists with a men's undershirt. From the office, she once again heard the "beeping" sound indicating that someone had walked into the store. But whoever had come in left immediately and Amberly had stayed quiet, fearing that Appellant would do her harm.

2

He left her in the office, briefly, squatting down under the computer desk with her shirt halfway over her head. He had said that everything was going to be okay, but she did not believe him. She assumed that he had gone to investigate whether anyone else was coming in.

When Appellant returned to the office, he hoisted her back up by her shirt and forced her to the cash register, from which he withdrew cash and a roll of receipt tape. But rather than leaving with the money, Appellant again re-deposited Amberly in the office. She testified that he continued to push her down and try to pull her shirt over her head, which scared her and made her nervous.

Finally, a man whom she had seen several times before entered the store and did not immediately leave. Heartened by his calling, "hello, hello," she screamed for help. The man followed her screams into the office and chased Appellant out of the store. Amberly dashed to the register and hit the panic button.

The police arrived within seconds, broadcast Appellant's description and deployed a helicopter equipped with night-vision technology. Officers in the helicopter detected Appellant's "heat signature" east of the store, and he was arrested shortly thereafter.

Later that night, Amberly identified Appellant from a photo spread. As Detective Edward Raynsford interviewed her, she noticed a spot of blood on her sweatshirt, which the detective collected for analysis. A forensic scientist compared a buccal swab taken from Appellant with cuttings from Amberly's

3

sweatshirt and the undershirt used to bind her hands during the robbery. DNA profiles from the cuttings matched each other and matched Appellant's DNA profile.

## Sufficiency of the Evidence

In his third point, Appellant argues that the evidence is insufficient because there is none showing that he verbally or physically did anything to threaten or cause Amberly any type of harm. He also denies that there is any evidence that she was actually in fear of imminent bodily injury or death. He further asserts that it is uncontroverted that he had no weapon, never alluded to or claimed to have a weapon, and never attempted to use anything as a weapon. Finally, he claims that he did not cause her any pain and did not threaten, physically or verbally, to cause her pain.

The *Jackson v. Virginia* standard is the sole standard for reviewing sufficiency of the evidence in criminal cases. 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *Brooks v. State*, 323 S.W.3d 893, 895 (Tex. Crim. App. 2010). In our due-process review of the sufficiency of the evidence to support a conviction, we view all of the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Wise v. State*, 364 S.W.3d 900, 903 (Tex. Crim. App. 2012). This standard gives full play to the responsibility of the trier of fact to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic

4

facts to ultimate facts. *Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Blackman v. State*, 350 S.W.3d 588, 595 (Tex. Crim. App. 2011).

The trier of fact is the sole judge of the weight and credibility of the evidence. Tex. Code Crim. Proc. Ann. art 38.04 (West 1979); *Wise*, 364 S.W.3d at 903. Thus, when performing an evidentiary sufficiency review, we may not re-evaluate the weight and credibility of the evidence and substitute our judgment for that of the factfinder. *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010). Instead, we determine whether the necessary inferences are reasonable based upon the cumulative force of the evidence when viewed in the light most favorable to the verdict. *Sorrells v. State*, 343 S.W.3d 152, 155 (Tex. Crim. App. 2011). We must presume that the factfinder resolved any conflicting inferences in favor of the verdict and defer to that resolution. *Jackson*, 443 U.S. at 326, 99 S. Ct. at 2793; *Wise*, 364 S.W.3d at 903.

The standard of review is the same for direct and circumstantial evidence cases; circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor. *Isassi*, 330 S.W.3d at 638; *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). In determining the sufficiency of the evidence to show an appellant's intent, and faced with a record that supports conflicting inferences, we "must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflict in favor of the prosecution, and must defer to that resolution." *Matson v. State*, 819 S.W.2d 839, 846 (Tex. Crim. App. 1991).

5

Penal code section 29.02 provides, in pertinent part, that a person commits robbery, if, in the course of committing theft and with intent to obtain or maintain control of the property, he intentionally or knowingly threatens or places another in fear of imminent bodily injury or death. Tex. Penal Code Ann. § 29.02(a)(2) (West 2011).

Appellant argues that there is no evidence he made any overt threats or displayed any weapon. It is not necessary that threats be overt in order to place another in fear of imminent bodily injury. *See Williams v. State*, 827 S.W.2d 614, 616 (Tex. App.—Houston [1st Dist.] 1992, pet. ref'd) ("Under the 'placed in fear' language in section 29.02 of the Texas Penal Code, the factfinder may conclude that an individual perceived or was 'placed in fear,' in circumstances where no actual threats were conveyed by the accused."); *Wilmeth v. State*, 808 S.W.2d 703, 706 (Tex. App.—Tyler 1991, no pet.) (holding that the jury may find requisite fear from a menacing glance and a hand gesture, even where no verbal threats were made). The court of criminal appeals has explained that

> It is well established that threats can be conveyed in more varied ways than merely a verbal manner. A threat may be communicated by action or conduct as well as words.

*McGowan v. State*, 664 S.W.2d 355, 357 (Tex. Crim. App. 1984).

Although Amberly denied feeling any pain while Appellant dragged her around the store, she admitted that she feared being hurt, that she was "scared to death", and that he grabbed her from the back of her shirt with "skin and shirt and yanked [her] back and pushed [her] where he wanted [her] to go." Further,

6

she testified and audio from the surveillance video confirms that she screamed for help when she heard the man who eventually rescued her walking into the store. She also testified that after she got home from the police station that night, her boyfriend noticed scratches "all over [her] back." The jury reasonably could have concluded from this evidence that Amberly was placed in fear of imminent bodily injury.

Applying the appropriate standard of review, and considering the entire record, we hold the evidence sufficient to support the jury's verdict as to each essential element of robbery under section 29.02 of the penal code. Accordingly, we overrule Appellant's third point.

**Limit on Cross-Examination**

Relying on *Easley v. State*, Appellant notes in his first point that fear of imminent harm or death must be of such nature that in reason and common experience would likely induce a reasonable person to part with his property against his will. 199 S.W.476, 478 (Tex. Crim. App. 1917). That fear must arise from the conduct of the accused rather than the mere "temperamental timidity" of the victim. *Cranford v. State*, 377 S.W.2d 957, 959 (Tex. Crim. App. 1964). Appellant argues that the trial court denied his constitutional rights of confrontation and cross-examination by preventing his asking questions relevant to showing Amberly's "temperamental timidity."

Appellant proffered to the trial court the questions he wanted to ask the witness. They dealt with Amberly's prior knowledge of other similar robberies

7

that had occurred in the neighborhood and whether she had been or was under treatment for any kind of nervous disorder.

It is well-established that the right of confrontation includes not only the right to face-to-face confrontation, but also the right to meaningful and effective cross-examination and that the main and essential purpose of confrontation is the opportunity for cross-examination through the process of putting direct and personal questions to the witnesses and the obtaining of immediate answers. *Coronado v. State*, 351 S.W.3d 315, 325 (Tex. Crim. App. 2011). Indeed, it is that personal presence of the defendant and the right to ask probing, adversarial cross-examination questions that lies at the core of an American criminal trial's truth-seeking function. *Id.* As the Supreme Court stated in *California v. Green*, the right of confrontation forces the witness to submit to cross-examination, the "greatest legal engine ever invented for the discovery of truth." 399 U.S. 149, 158, 90 S. Ct. 1930, 1935 (1970).

The State argues that Appellant failed to preserve his claim under rule of evidence 103 by making an offer of proof because the record does not reflect what answers he expected to get. But even if we were to assume for the sake of argument that Appellant preserved his claim, he would not prevail because he has not been harmed.

Although Appellant now frames his point as a violation of the Confrontation Clause, he did not raise the issue of constitutional error before the trial court. He made no reference to the constitutional right of confrontation or to any other

constitutional claim in the trial court relative to this point on appeal. Therefore, were we to hold that the trial court erred, our review for harm would be governed by rule 44.2(b), which provides, "Any other error, defect, irregularity, or variance that does not affect substantial rights must be disregarded." Tex. R. App. P. 44.2(b).

Thanks to the security system video, the jury had the opportunity see what transpired as the robbery was being committed. The jury had the opportunity to view Appellant's conduct and demeanor and to view Amberly's conduct and demeanor, as well. It also had the opportunity to view Amberly's demeanor in court as she testified on the witness stand. Other than the inquiry into other influences that might have affected her perception of the events during the robbery, Appellant was not denied his right of personal confrontation and cross-examination of the witness who testified against him. The jury saw him grab, push, and drag her through the store. It heard testimony that she was afraid but felt no pain. The jury also heard testimony that she suffered scratches on her back that were visible when she returned home after the robbery.

Considering the record as a whole, we hold that Appellant suffered no violation to his substantial rights as a result of the limitations the trial court imposed on cross-examination. Accordingly, we overrule Appellant's first point.

### Lesser-Included-Offense Instruction

In his second point, Appellant argues that the trial court erred by denying his requested jury instruction on the lesser-included offense of theft. An

9

appellate court employs a two-step analysis to determine whether an appellant was entitled to a lesser-included offense instruction. *Ex parte Watson*, 306 S.W.3d 259, 262–63 (Tex. Crim. App. 2009). First, the lesser-included offense must fall within article 37.09 of the code of criminal procedure. Second, some evidence must exist in the record that would permit a jury rationally to find that if the appellant is guilty, he is guilty only of the lesser offense. *Hall v. State*, 225 S.W.3d 524, 536 (Tex. Crim. App. 2007).

Appellant was charged with the offense of robbery in the course of committing theft. Theft is a lesser-included offense of robbery when, as in this case, the facts at trial show a completed theft. *Earls v. State*, 707 S.W.2d 82, 84–85 (Tex. Crim. App. 1986). We have addressed the sufficiency of the evidence to support those elements of robbery that distinguish that offense from the offense of theft. The jury was able to watch the video from the store surveillance camera, to examine still photographs from the video, to hear Amberly's testimony about the robbery, and to assess its observations and the testimony in determining whether Appellant placed her in fear of imminent bodily injury. We find nothing in the record that would allow a rational juror hearing the facts adduced at trial and examining the evidence to conclude that Appellant's actions did not place Amberly in fear of imminent bodily injury or to conclude that her fear was unreasonable.

> It is not enough that the jury may disbelieve crucial evidence pertaining to the greater offense. Rather, there must be some evidence directly germane to a lesser included offense for the

10

factfinder to consider before an instruction on a lesser included offense is warranted.

*Bignall v. State*, 887 S.W.2d 21, 24 (Tex. Crim. App. 1994).

We hold that the trial court did not err when it denied Appellant's requested jury instruction. Accordingly, we overrule Appellant's second point.

## Conclusion

Having overruled Appellant's three points, we affirm the trial court's judgment.

/s/ Anne Gardner
ANNE GARDNER
JUSTICE

PANEL: LIVINGSTON, C.J.; DAUPHINOT and GARDNER, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED: July 10, 2014

11