

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

---

### NO. PD-1022-12

---

**MICHAEL COOPER, Appellant**

**v.**

**THE STATE OF TEXAS**

---

### ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW
### FROM THE THIRD COURT OF APPEALS
### TRAVIS COUNTY

---

**KELLER, P.J., filed a concurring opinion in which JOHNSON, J., joined.**

This case presents "an exceedingly complex double-jeopardy question"[1] regarding whether

the State may obtain two aggravated robbery convictions involving the same victim and the same

transaction. At issue is whether the State may obtain a conviction for aggravated robbery by "threat"

and a conviction for aggravated robbery by causing bodily injury. Had one of those two convictions

been for the lesser-included offense of aggravated assault instead (the bodily injury count), this case

---

[1] *See Ex parte Denton*, 399 S.W.3d 540, 547 (Tex. Crim. App. 2013) (Keller, P.J., concurring).

would have been legally indistinguishable from our recent opinion in *Garfias v. State*.[2]  But the State

in the present case did not settle for one conviction for aggravated robbery and one conviction for

aggravated assault.  Instead, the State obtained two convictions for aggravated robbery.  I agree with

a majority of this Court that the two convictions for aggravated robbery violates double jeopardy.

I further agree to remanding this case to the court of appeals to determine the appropriate remedy in

the first instance.

### A. Error: The Underlying Elements are
### Alternative Methods of Committing the Same Offense

### 1. *Only One Statute is at Issue*

The offense of aggravated robbery incorporates the elements of the lesser offense of robbery,

and it is the provisions of the robbery statute, alone, that are at issue here.  Parsing the provisions of

a single statutory section "is unlike a situation involving different statutes," because the codification

of offenses in different statutes is by itself "some indication of legislative intent to authorize multiple

prosecutions."[3]  When a double-jeopardy claim involves the provisions of a single statute, we

perform a "units" analysis to determine the allowable unit of prosecution that the statute prescribes

and how many units have been shown at trial.[4]  The allowable unit of prosecution a statute prescribes

---

[2]  *Garfias v. State*, 424 S.W.3d 54 (Tex. Crim. App. 2014) (holding that aggravated robbery by threat and aggravated assault by causing bodily injury are separate offenses for double-jeopardy purposes).  A basis for distinction from *Garfias* might be found in the rationale of the concurring opinion in *Garfias*, but the concurring opinion failed to carry the day.  As the concurring opinion points out, the Court's opinion in *Garfias* holds that convictions for "aggravated robbery by threat and aggravated assault causing bodily injury . . . never . . . violates double jeopardy."  *Id.* at 64 (Cochran, J., concurring).

[3]  *Vick v. State*, 991 S.W.2d 830, 832 (Tex. Crim. App. 1999).

[4]  *Jones v. State*, 323 S.W.3d 885, 888 (Tex. Crim. App. 2010);  *Vick*, 991 S.W.2d at 832. *See also Blockburger v. United States*, 284 U.S. 299, 303 (1932) (Second drug sale was a separate

is purely a matter of statutory construction, but it is a less structured analysis than that required in the two-statute scenario, with all relevant information being reviewed in an attempt to ascertain the legislature's intent.[5]

In ascertaining the unit of prosecution, a court will face one of two basic fact patterns. Sometimes, the court must address whether the State can punish a defendant multiple times for the same statutorily prohibited conduct.[6] This fact pattern is implicated when a court is called upon to determine, for example, whether separate offenses can be prosecuted based upon there being more than one victim, or more than one item taken, or more than one item of contraband possessed.[7] The second fact pattern occurs "when the same statutory section lists multiple methods of committing an offense, and this Court is called upon to determine whether these different methods of commission are different offenses or are merely alternate means of committing the same offense."[8]

In either fact pattern, the best indicator of legislative intent with respect to the unit of

---

offense because it "was not the result of the original impulse, but of a fresh one."); *Ex parte Goodbread*, 967 S.W.2d 859, 860-61 (Tex. Crim. App. 1998) (can have multiple prosecutions for different incidents of the same type of sexual assault); *Vick*, 991 S.W.2d at 832-34 (penetration of anus and sexual organ are different units in aggravated sexual assault); *Ex parte Hawkins*, 6 S.W.3d 554, 556 (Tex. Crim. App. 1999) (different victims are different units in a robbery); *Ex parte Cavazos*, 203 S.W.3d 333, 335-37 (Tex. Crim. App. 2006) (entry is the unit in a burglary).

[5] *Jones*, 323 S.W.3d at 888 & n.17. *See also Sanabria v. United States*, 437 U.S. 54, 69-70 & n.24 (1978).

[6] *See, e.g., Jones*, 323 S.W.3d at 886, 893 (each false statement held to be the unit of prosecution, so that three false statements in a single loan application constituted three crimes).

[7] *See id.* at 888 n.16.

[8] *Id.*

prosecution is generally the focus or gravamen of the offense.[9]  We have also said that the unit of prosecution "tends to be defined by the offense element that requires a completed act."[10]  And we have also explained that we can use grammar as an aid in determining focus or gravamen.[11]  But, if after looking at all relevant factors, we find the legislature's intent with respect to the unit of prosecution to be insolubly ambiguous, we should keep in mind that the provisions at issue are in the same statutory section, and we should resolve uncertainty in favor of a conclusion that they are alternative manners and means of committing the same offense.

### 2. *Structure of the Robbery Statute and the Capital Murder Analogy*

The robbery statute provides:

A person commits an offense if, in the course of committing theft as defined in Chapter 31 and with intent to obtain or maintain control of the property, he:

> (1) intentionally, knowingly, or recklessly causes bodily injury to another; or
> (2) intentionally or knowingly threatens or places another in fear of imminent bodily injury or death.[12]

Judge Price's position is, at least implicitly, that the two subsections of the robbery statute cited above set forth two separate underlying offenses of assault: assault by threat and assault by causing bodily injury.  He further contends that, because assault by threat is a separate offense from assault by causing bodily injury, a robbery that incorporates an assault by threat would be a separate

---

[9]  *Id.* at 889.

[10]  *Id.* at 890.

[11]  *Id.*

[12]  TEX. PENAL CODE § 29.02(a).

offense from a robbery that incorporates an assault by causing bodily injury.

It is true that we have characterized bodily-injury assault as "a separate and distinct crime" from assault by threat and, also, that an "aggravated assault under each distinct assaultive crime is a separate crime."[13] "[O]nce the underlying type of assault is defined, then either of the aggravating factors set out [in the aggravated-assault statute] may elevate that distinct assaultive crime to a second-degree felony. The aggravating factors or elements are simply the way in which the simple assault becomes a more serious offense."[14]

But the unit of prosecution for a greater offense is not always wholly defined by the unit of prosecution for an underlying lesser offense. For example, no one would dispute that robbery and aggravated sexual assault are separate offenses, even when those offenses are committed against the same person in the same transaction. But incorporate those lesser offenses into a capital-murder charge[15] and they become alternative methods of committing capital murder rather than separate capital-murder offenses.[16] The State could not obtain two capital-murder convictions based on the killing of a single person during the course of a robbery and an aggravated sexual assault. But the State could limit its theory of capital murder to murder in the course of a robbery and then pursue the aggravated sexual assault as a separate offense. Analytically, that is exactly what happened in *Garfias* with respect to the offense of aggravated robbery: the State limited its theory of aggravated

---

[13] *Landrian v. State*, 268 S.W.3d 532, 540 (Tex. Crim. App. 2008).

[14] *Id.* This reasoning applies readily to *aggravated* robbery as compared to robbery, *see* TEX. PENAL CODE § 29.03(a), but the question in this case is whether the reasoning also applies to robbery as compared to assault.

[15] TEX. PENAL CODE 19.03(a)(2).

[16] *Davis v. State*, 313 S.W.3d 317, 342 (Tex. Crim. App. 2010).

robbery to aggravated robbery by threat and pursued aggravated assault by causing bodily injury as a separate offense.

Is robbery more like aggravated assault or more like capital murder? It is true that we emphasized the assaultive aspect of robbery in *Hawkins* and used that emphasis as part of the reasoning for our later observation in *Jones* that a gravamen element tends to be one that requires a completed act.[17] We explained that the robbery statute does not require that a theft be completed;[18] it requires only that the person be "in the course of committing theft."[19] And in *Hawkins* we characterized robbery as "a form of assault."[20] *Hawkins* and *Jones* both involved the first fact pattern in a units inquiry—whether a person can be punished multiple times for the same statutorily prohibited conduct. In *Hawkins*, the defendant threatened two people but stole only one item,[21] and we held that the unit of prosecution was each victim threatened.[22] In *Jones*, the defendant made three false statements apiece in two loan applications,[23] and we held that the unit of prosecution was each false statement.[24] The observations made in those cases make sense in the context of the fact pattern that existed in those cases, which required counting multiple instances of the same statutorily

---

[17] *See Jones*, 323 S.W.3d at 890.

[18] *Id.*; *Hawkins*, 6 S.W.3d at 559-60.

[19] *See* TEX. PENAL CODE § 29.02(a).

[20] *Hawkins*, 6 S.W.3d at 560.

[21] *Id.* at 555.

[22] *Id.* at 561.

[23] 323 S.W.3d at 886.

[24] *Id.* at 893.

proscribed behavior. With respect to robbery, if a theft is not complete, there are no stolen items to count. But in every robbery, the assaultive conduct[25] is complete, so there will be a countable number of people who have been subjected to that conduct.

But for reasons discussed below, I think that the theft aspect of robbery seems especially relevant to the second fact pattern as implicated in this case, whether the different underlying assaultive behaviors proscribed are alternative methods of committing the same offense or separate offenses. Although robbery does not require a completed theft, the theft portion of the robbery statute does require activity: the offender must be in the course of committing theft. The requirement that there be theft activity is a common element to the different statutory methods of committing robbery: the "in the course of committing theft" requirement is listed in the body of subsection (a) while the different underlying assaultive behaviors are listed in subdivisions (1) and (2) under subsection (a). This statutory structure of certain activity serving as a common element is the same as found in the capital-murder statute (in which an intentional or knowing murder is the common element)[26] and the failure-to-stop-and-render-aid statute (in which an accident is the common element),[27] and it is analytically similar to the burglary statute (in which entry is the common element)[28] and to how we have analyzed the felony-murder statute (discussing death of an individual

---

[25] By assaultive conduct, I do not necessarily mean a completed crime of assault, as I will explain below.

[26] *See* TEX. PENAL CODE § 19.03(a); *Davis*, 313 S.W.3d at 342.

[27] *See* TEX. TRANSP. CODE §550.021; *Huffman v. State*, 267 S.W.3d 902, 907-09 (Tex. Crim. App. 2008).

[28] *See* TEX. PENAL CODE § 30.02; *Cavazos*, 203 S.W.3d at 335-37.

as the common element shared by underlying felonies in a felony-murder prosecution).[29]

By contrast, activity that serves as a common element is absent from several statutes in which the different methods of committing an offense have been construed as separate offenses. For example, in the indecency-with-a-child statute, the body of subsection (a) simply outlines "with a child" younger than age 17 and then enumerates subdivisions that specify prohibited conduct.[30] In the aggravated-sexual-assault statute, the body of subsection (a) simply states that "[a] person commits an offense."[31] In fact, one has to drop all the way down to subdivision (i) before the statute outlines any sort of activity, and at that level, the statute outlines a number of alternative acts.[32] Likewise, the assault statute simply provides introductory language in the body of subsection (a) and then outlines the relevant threat and bodily-injury elements in subdivisions (1) and (2).[33] The only common element provided in the aggravated-assault statute is that an assault must occur, which then takes us back to the absence of a common element in the assault statute.[34] Thus, in terms of structure, the robbery statute is more like the capital-murder statute than the aggravated-assault statute.

There are differences. The theft element in the robbery statute is framed in the passive voice,

_____

[29] *See Contreras v. State*, 312 S.W.3d 566, 585 (Tex. Crim. App. 2010).

[30] *See* TEX. PENAL CODE § 21.11(a); *Loving v. State*, 401 S.W.3d 642, 647-49 (Tex. Crim. App. 2013).

[31] *See* TEX. PENAL CODE § 22.021(a); *Gonzales v. State*, 304 S.W.3d 838, 846-49 (Tex. Crim. App. 2010).

[32] *See* TEX. PENAL CODE § 22.021(a).

[33] See *id.* § 22.01(a) ("A person commits an offense if the person . . . ."); *Landrian*, 268 S.W.3d at 540.

[34] *See* TEX. PENAL CODE § 22.02(a); *Landrian*, 268 S.W.3d at 540.

in the same manner, in fact, as the *underlying* offenses in the capital-murder statute.[35]  In this sense, the order of the statutes is inverted: the capital-murder statute contains an actively worded common element with passively worded "in the course of" underlying elements while the robbery statute contains a passively worded "in the course of" common element with actively worded underlying elements.  This inversion of the passively worded elements helps explain why the assaultive elements in the robbery statute are part of the gravamina of robbery while the underlying offenses in the capital-murder statute are not considered part of the gravamina for capital murder.[36]  Nevertheless, by making the theft aspect of robbery a common element, the legislature has accorded it more prominence than is the case with the similarly worded underlying elements of capital murder.

### 3. *Absence from Aggravated Assault Statute*

Moreover, if the legislature had intended for robbery to be *simply* an aggravated form of assault, it could have made the fact that the assault was committed in the course of a theft an aggravating circumstance in the aggravated-assault statute.[37]  And to preserve enhanced punishment for what is now termed *aggravated* robbery, the legislature could have provided for enhanced punishment within the aggravated-assault statute for the confluence of multiple aggravating circumstances as it has done for other circumstances in the aggravated-assault statute[38] and as it has

---

[35] *Compare* TEX. PENAL CODE § 29.02(a) *with id.* § 19.03(a)(2) (the latter providing for the underlying offenses that "the person intentionally commits the murder in the course of committing or attempting to commit kidnapping, burglary . . . ." etc.).

[36] *See Davis*, 313 S.W.3d at 342 (the existence of multiple victims for *underlying* offenses is not relevant to determining the number of capital murders committed).

[37] *See* TEX. PENAL CODE § 22.02(a)(1), (2) (aggravating circumstances).

[38] *See id.* § 22.02(b) (circumstances under which aggravated assault is a first-degree felony).

done for the offense of aggravated sexual assault.[39] But the legislature has chosen not to treat what is now the offense of robbery as simply an aggravated version of assault. In fact, robbery is not even in the same title, much less the same chapter, as the offense of assault.[40] We did not find that fact to be controlling with respect to the issue decided in *Hawkins*,[41] but it is a relevant fact to consider.

### 4. *Completed Assault Not Required*

Another factor that mitigates against a lockstep analysis of using the unit of prosecution for assault for all purposes for the offense of robbery is that a completed assault is not always required for a robbery. This conclusion is based upon an important difference between the wording of the "threat" provision in the robbery statute and the "threat" provision in the assault statute. The "threat" provision of the assault statute provides that a person commits an offense if he "intentionally or knowingly threatens another with imminent bodily injury."[42] The counterpart provision in the robbery statute provides that a person commits an offense if he "intentionally or knowingly threatens *or places* another *in fear of* imminent bodily injury or death."[43] As can be seen, the robbery statute contains the phrase "places . . . in fear of" that is not contained in the assault statute.

In *Williams v. State*, the First Court of Appeals construed this difference in language to mean that a threat is not actually required to establish robbery:

---

[39] *See id.* § 22.021(f)(2) (enhanced punishment if victim was younger than 14 and there was another aggravating circumstance, provided elsewhere in the statute).

[40] *Compare id.*, Title 5 (Offenses Against the Person), Chapter 22 (Assaultive Offenses) *with id.*, Title 7 (Offenses Against Property), Chapter 29 (Robbery).

[41] 6 S.W.3d at 560.

[42] TEX. PENAL CODE § 22.01(a)(2).

[43] *Id.* § 29.02(a)(2) (emphasis added).

> We note that an element of the crime of robbery, "*places* another in fear of imminent bodily injury," TEX. PENAL CODE ANN. § 29.02(a)(2) (Vernon 1989) (emphasis added), differs from an often compared, but vastly dissimilar element for the crime of assault, "*threatens* another with imminent bodily injury," TEX. PENAL CODE ANN. § 22.01(a)(2) (Vernon 1989) (emphasis added). The general, passive requirement that another be "placed in fear" cannot be equated with the specific, active requirement that the actor "threaten another with imminent bodily injury." Under the "placed in fear" language in section 29.02 of the Texas Penal Code, the factfinder may conclude that an individual fear or was "placed in fear," in circumstances where no actual threats were conveyed by the accused.[44]

In published opinions, the Third, Sixth, and Fourteenth courts of appeals have followed *Williams*.[45]

In *Wilmeth v. State*, the Twelfth Court of Appeals indicated that "a menacing glance" could be sufficient to show that the defendant placed a victim in fear of imminent bodily injury.[46] The *Williams'* construction of the robbery statute appears to be the unanimous view of the courts of appeals that have addressed the issue.[47]

---

[44] 827 S.W.2d 614, 616 (Tex. App.–Houston [1st Dist.] 1992) (emphasis in original).

[45] *Welch v. State*, 880 S.W.2d 225, 227 (Tex. App.–Austin 1994); *Howard v. State*, 306 S.W.3d 407, 410-11 (Tex. App.–Texarkana 2010); *Burton v. State*, 230 S.W.3d 846, 852 (Tex. App.–Houston [14th Dist.] 2007). *See also Boston v. State*, 373 S.W.3d 832, 840 (Tex. App.–Austin 2012) ("Moreover, '[b]y defining robbery to be theft plus *either* threatening or placing another in fear, [the robbery] statute demonstrates that the term "threaten" means something other than placing a person "in fear of imminent bodily injury or death."'") (quoting from *Olivas v. State*, 203 S.W.3d 341, 345-46 (Tex. Crim. App. 2006), emphasis in *Olivas* and *Boston*, brackets in *Boston*).

[46] 808 S.W.2d 703, 706 (Tex. App.–Tyler 1991).

[47] *See* authorities cited above. If one includes unpublished opinions, thirteen of the fourteen courts of appeals have addressed and endorsed the *Williams* view. *See Ross v. State*, 2012 Tex. App. LEXIS 7068 (Tex. App.–Fort Worth August 23, 2012) (not designated for publication) (citing *Burton* for the proposition that the defendant's informing teller that this is a "holdup" and demanding money reasonably placed the teller in fear of bodily injury); *Reed v. State*, 2012 Tex. App. LEXIS 1650, *11 (Tex. App.–Waco February 29, 2012) (not designated for publication) ("Under the 'placed in fear' language of section 29.02, the fact-finder may conclude that an individual was 'placed in fear' in circumstances where no actual threats are conveyed."); *Britton v. State*, 2011 Tex. App. LEXIS 5421, *3 (Tex. App.–Dallas July 15, 2011) (not designated for publication) ("If no actual threats were conveyed by the defendant, the factfinder must conclude the victim 'perceived fear' or

That view appears to be well-taken. The theft aspect of robbery creates a situation in which fear is more likely to occur, even in the absence of an actual threat. A person who has a gun in a holster, gives the store clerk a menacing glance intended to place the clerk in fear of death, and says, "Give me your money," has committed a robbery even if an actual threat has not been conveyed.[48]

---

was 'placed in fear' by the circumstances, including the defendant's words and actions."); *Hines v. State*, 2010 Tex. App. LEXIS 6739, 12 (Tex. App.–Corpus Christi August 19, 2010) (not designated for publication) ("Under the 'placed in fear' language contained in penal code section 29.02, the factfinder may conclude that an individual was 'placed in fear' in circumstances when no actual threats are conveyed."); *Barrow v. State*, 2010 Tex. App. LEXIS 4128, *7 (Tex. App.–Amarillo May 28, 2010) (not designated for publication) ("Under the 'placed in fear' language in section 29.02 of the Penal Code, the factfinder may conclude that an individual perceived fear or was 'placed in fear,' in circumstances where no actual threats were conveyed by the accused."); *Mesquiti v. State*, 2005 Tex. App. LEXIS 39, *2-3 (Tex. App.–San Antonio January 5, 2005) (not designated for publication) ("The general, passive requirement that another be 'placed in fear' cannot be equated with the specific, active requirement that the actor 'threaten another with imminent bodily injury.' Under the 'placed in fear' language, the factfinder may conclude that an individual perceived fear or was 'placed in fear,' in circumstances where no actual threats were conveyed by the accused.") (citations omitted); *Bradley v. State*, 2004 Tex. App. LEXIS 866. *3 (Tex. App.–Beaumont January 28, 2004) (not designated for publication) ("Under the 'placed in fear' language, the factfinder may find that an individual perceived fear in a situation where the accused made no actual threats."); *Lavender v. State*, 2003 Tex. App. LEXIS 8367, *6 (Tex. App.–Eastland Sept. 25, 2003) (not designated for publication) ("The accused need not expressly threaten another or display a weapon to commit robbery. It is sufficient to constitute robbery if the accused places the complainant in fear of bodily injury or death to the degree that 'reason and common experience' will likely induce the complainant to part with his property against his will.") (citations to *Williams* and other cases omitted); *Adkins v. State*, 2003 Tex. App. LEXIS 2644 (Tex. App.–Fort Worth March 24, 2003) (not designated for publication) (Under assault statute, "there must at least be evidence of some overt conduct by the defendant that suggests he acted with an intent to threaten"—citing *Williams* as "comparing robbery statute that requires 'placing' another in fear with the assault statute.").

[48] *See Plummer v. State*, 410 S.W.3d 855, 862 (Tex. Crim. App. 2013) ("If one exhibits a deadly weapon—or, in the words of *Patterson*, 'consciously displays' it —without overtly using it to harm or threaten while committing a felony, the deadly weapon still provides intimidation value that assists the commission of the felony."); *Boston v. State*, 410 S.W.3d 321, 326-27 (2013) ("[B]randishing a firearm is not the only way in which a person can be threatened or placed in fear in accordance with the [robbery] statute. We believe that Hemphill's conduct in reaching over the counter and taking money from the cash register was threatening because his actions were a 'menacing indication of (something dangerous, evil, etc.)'").

Likewise, a robber could threaten one individual in a store while knowing that others present will have heard the threat.[49] The robber may not have threatened these other individuals, but if he knew the others would be placed in fear, then he has (*à la Hawkins*) committed a robbery against them.

### 5. *Conclusion*

The above discussion convinces me that the conduct of being in the course of committing a theft is a gravamen of robbery, though it is not the controlling gravamen in every situation. None of this discussion undermines our prior holding in *Hawkins* that a robbery occurs with respect to each individual who is subjected to assaultive conduct (in the broad robbery sense). But this discussion leads me to conclude that the "threat" and "bodily" injury elements of robbery are simply alternative methods of committing a robbery. Thus, the unit of prosecution in a robbery case is each individual subjected to assaultive conduct during the course of a theft.

Although some significant factors can be cited to support a conclusion that the different methods of committing robbery are different offenses, these factors, at best, counterbalance other factors that weigh against such a conclusion—muddying the issue of how the unit of prosecution should be resolved. Given that state of affairs, we should accord determinative weight to the legislature's decision to place these different means of committing robbery in the same statutory section and hold that they are alternative methods of committing the offense.

### B. Remedy

As has been explained above, the State could have avoided violating double-jeopardy if, for each victim, instead of obtaining two convictions for aggravated robbery, the State had obtained one

---

[49] *See Howard v. State*, 333 S.W.3d 137, 139 (Tex. Crim. App. 2011) (discussing *Rayford v. State*, 3 S.W.2d 300 (Tex. Crim. App. 1968), which involved a situation in which a wife witnessed the robber threatening her husband and thus was also a victim of robbery).

conviction for aggravated robbery and one conviction for aggravated assault, as occurred in *Garfias*. In *Bowen v. State*, we held in the sufficiency-of-the-evidence context that an appellate court has the power to reform a greater offense to a lesser-included offense even if the lesser-included offense had not been requested or submitted to the finder of fact.[50] The question arises whether, consistent with *Bowen*, an appellate court ought to reform a conviction instead of vacating the conviction entirely, if reformation would obviate a double-jeopardy violation. Now that we have found a double-jeopardy violation, the parties will have the opportunity to address the appropriate remedy on remand to the court of appeals. Discussion of the appropriate remedy would include whether reformation is appropriate and, possibly, whether the State wishes to waive any right to reformation.[51] With these comments, I join the opinion of the Court.

Filed: May 14, 2014
Publish

---

[50] 374 S.W.3d 427 (Tex. Crim. App. 2012).

[51] It is possible that the State will not wish to undergo the time and expense of a new punishment hearing on reformed offenses, especially since the punishment for such offenses would run concurrently with the retained charged offenses. In the plea-bargain context, we have indicated that the State can waive its right to further proceedings by agreeing to the striking of a conviction as the remedy for a double-jeopardy violation. *Ex parte Ervin*, 991 S.W.2d 804, 817 (Tex. Crim. App. 1999) ("[T]he State does not request that the guilty plea be set aside, nor does the State request that we try to effectuate the agreement by reforming one of the convictions to a lesser-included offense that would not be considered the 'same' offense. Instead the State has suggested in its answer that we vacate the first conviction . . . . We have implied that the State may be able to waive an illegal portion of a judgment and maintain the remainder of the plea agreement . . . .We expressly hold that today and find that the State has done so in this case.").