

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

---

No. 06-16-00046-CR

---

JACQULYN NICOLE FERGUSON, Appellant

V.

THE STATE OF TEXAS, Appellee

---

On Appeal from the 4th District Court
Rusk County, Texas
Trial Court No. CR16-001

---

Before Morriss, C.J., Moseley and Burgess, JJ.
Opinion by Justice Burgess

# OPINION

Jacqulyn Nicole Ferguson was arrested in Rusk County for possession of a controlled substance in an amount less than one gram (the underlying offense). She was released after posting a $100,000.00 surety bond, which she obtained from Nick's Bail Bonds. After hearing evidence that Ferguson missed a December 14, 2015, trial date for the underlying offense, a jury convicted her of bail jumping and failure to appear. In accordance with the jury's assessment, the trial court sentenced Ferguson to two and one-half years' imprisonment and ordered her to pay a $5,000.00 fine, but suspended the sentence and placed her on five years' community supervision.

Ferguson appeals her conviction on the ground that it is not supported by legally sufficient evidence. Specifically, she argues that the State failed to prove that she intentionally or knowingly committed the offense because she had no notice of the special trial setting. Because we agree, we reverse the trial court's judgment and render a judgment of acquittal.[1]

---

[1]The State's original indictment alleged that Ferguson committed the offense on December 14, 2015, but omitted a copy of the bond. The State subsequently moved to amend the indictment by attaching a copy of the bond. The trial court granted the State's motion and amended the indictment in writing to attach a copy of the bond. However, in doing so, and without any request from the State, the trial court mistakenly changed the date of the alleged failure to appear from December 14, 2015, to December 14, 2016.

On the day of trial, after the State indicated to the jury that the date of the alleged offense was December 14, 2015, Ferguson objected that the State had read the original indictment, instead of the amended indictment. After the State claimed, "[I]t's the exact same indictment. The only difference is . . . we attached a copy of the bond," Ferguson argued that the amended indictment was fatally defective because it "allege[d] a date that[ was] 9 1/2 months into the future." Ferguson further argued that the amended indictment could not be amended a third time to reflect the proper date of offense because the jury had been seated and sworn. The trial court overruled Ferguson's objection, the State did not ask to amend the indictment a third time to reflect the correct date, and the amended indictment was never corrected. Yet, the trial court's jury charge instructed the jury to find Ferguson guilty if it determined that she intentionally or knowingly failed to appear on December 14, 2015.

On appeal, Ferguson assumes that the indictment was amended the third time, even in the absence of a written interlineation reflecting that fact, and also argues that the trial court erred in overruling her objections to the State's motion to amend the indictment after trial had commenced. In response, the State has conceded error on this point and prays that we reverse and remand the case for a new trial.

Yet, we note that the State never asked the trial court to change the date alleged in the original indictment. Thus, by changing the year of the offense to 2016 instead of 2015, which the record indicates was by mistake, the trial

2

## I.      Standard of Review

In evaluating legal sufficiency, we review all the evidence in the light most favorable to the trial court's judgment to determine whether any rational jury could have found the essential elements of the offense beyond a reasonable doubt. *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)); *Hartsfield v. State*, 305 S.W.3d 859, 863 (Tex. App.—Texarkana 2010, pet. ref'd). Our rigorous legal sufficiency review focuses on the quality of the evidence presented. *Brooks*, 323 S.W.3d at 917–18 (Cochran, J., concurring). We examine legal sufficiency under the direction of the *Brooks* opinion, while giving deference to the responsibility of the jury "to fairly resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) (citing *Jackson*, 443 U.S. at 318–19); *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007).

Legal sufficiency of the evidence is measured by the elements of the offense as defined by a hypothetically correct jury charge. *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). The "hypothetically correct" jury charge is "one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Id.* Ferguson was indicted for bail jumping and failure to appear in court on

court granted relief that was not requested and exceeded its authority in doing so. Accordingly, the alteration in the year of the offense in the amended indictment was simply ineffective. Because (1) we conclude that the mistaken change of date in the amended indictment was ineffective; (2) the jury determined, based on the jury charge, whether Ferguson jumped bail on December 14, 2015; and (3) the case was tried using the December 14, 2015, date, we use the date originally alleged in the indictment—December 14, 2015—in addressing Ferguson's legal sufficiency argument.

3

December 14, 2015. The State was required to prove that she "(1) was lawfully released from custody, with or without bail; (2) on condition that [s]he subsequently appear; and (3) intentionally or knowingly failed to appear in accordance with the terms of h[er] release." *Johnson v. State*, 416 S.W.3d 602, 606 (Tex. App.—Houston [14th Dist.] 2013, no pet.) (citing *Walker v. State*, 291 S.W.3d 114, 117 (Tex. App.—Texarkana 2009, no pet.)); *see* TEX. PENAL CODE ANN. § 38.10(a) (West 2011). Only the third element is at issue in this case.

## II. Ferguson's Conviction is Not Supported by Legally Sufficient Evidence

The central issue in this case is whether the State demonstrated that Ferguson had prior notice to appear for a trial setting that was specially set on December 14, 2015. Because we find that the State did not prove that Ferguson had such notice beyond a reasonable doubt, we conclude that Ferguson's conviction was not supported by legally sufficient evidence.

### A. The State's Burden in This Case

"[F]ailure to appear in accordance with the terms of one's release is a crime only if the failure is *intentional* or *knowing*." *Richardson v. State*, 699 S.W.2d 235, 238 (Tex. App.—Austin 1985, pet. ref'd) (per curiam) (op. on reh'g). "Such a culpable mental state cannot be shown absent proof the defendant had notice of the proceeding at which he failed to appear." *Id.*

"Generally, an instanter bond gives proper notice and, in the absence of evidence of a reasonable excuse, is sufficient to prove an appellant intentionally and knowingly failed to appear." *Bell v. State*, 63 S.W.3d 529, 531 (Tex. App.—Texarkana 2001, pet. ref'd) (citing *Euziere v. State*, 648 S.W.2d 700, 702 (Tex. Crim. App. 1983); *Etchison v. State*, 880 S.W.2d 191, 192 (Tex. App.—Texarkana 1994, no pet.)). However, a bail bond must state whether the defendant is

4

charged with a misdemeanor or felony and must set forth the time, place, and court where the defendant is required to appear. TEX. CODE CRIM. PROC. ANN. art. 17.08 (West 2015). The terms of Ferguson's bond provided:

> THE CONDITION OF THIS BOND is that the defendant (principal) has been charged with a (felony) (misdemeanor) offense; to wit:
> CHARGE: Possession of Controlled Subst. and to secure his release from custody is entering into this obligation binding him to appear before the proper COURT of RUSK COUNTY, TEXAS, as he may be directed.
>
> NOW THEREFORE, IF THE SAID PRINCIPAL SHALL WELL AND TRULY MAKE HIS PERSONAL APPEARANCE BEFORE SAID COURT INSTANTER as well as before any other court to which the same may be transferred and for any and all subsequent proceeding[s] that may be had relative to said charge in the course of criminal actions based on said charge, and there remain from day to day and term of said courts, until discharged by due course of law, then and there to answer said accusation against him, his obligation shall become void, otherwise to remain in full force and effect.

The face of the bond demonstrates that, although a cause number was written on it,[2] the bond failed to advise Ferguson of (1) the name of the court in which she was to appear to answer the charge listed in the underlying offense, (2) the date on which she was to appear in court, (3) the time at which she was to appear in court, and (4) whether the underlying offense was a felony or misdemeanor. Accordingly, the bond wholly failed as prime facie evidence that Ferguson had actual notice of the date of her trial. *See Fish v. State*, 734 S.W.2d 741, 743–44 (Tex. App.—Dallas 1987, pet. ref'd); *Richardson*, 699 S.W.2d at 238.

When, as here, "the instanter bond does not show prima facie evidence that the defendant had actual notice," "the state must do more than prove the  terms of the bond in order to meet its

---

[2]Ferguson's counsel pointed out during trial that the "cause number didn't exist until she was indicted months later."

5

burden of proving an intentional or knowing failure to appear." *Bell*, 63 S.W.3d at 531, 532 (citing *Fish*, 734 S.W.2d at 743–44; *Richardson*, 699 S.W.2d at 238). "In such cases, the state must offer evidence that the defendant did have actual notice, or that [s]he engaged in a course of conduct designed to [avoid] receiving notice." *Id.* at 532. We examine the evidence at trial to determine if the State met this burden.

**B.     The Evidence at Trial**

The record demonstrates that Ferguson was aware that the underlying offense was pending in the 4th Judicial District Court of Rusk County, Texas. On November 9, 2015, Ferguson appeared in court with her then-retained counsel, Jeff Jackson. On that date, the trial court held a hearing to consider whether it should grant Jackson permission to withdraw as Ferguson's retained counsel since Ferguson was unable to pay him to defend the underlying offense. After Jackson indicated that he was willing to become Ferguson's court-appointed counsel, the trial court granted Jackson's motion to withdraw as retained counsel, found Ferguson indigent, appointed Jackson as her court-appointed counsel, and set the case for trial on November 16, 2015.

However, no trial was held on that date due to unavailability of one of the State's key witnesses. Jackson told the jury that he spoke with Ferguson on November 16 to inform her that the trial had been reset. Jackson testified,

> She asked me when the trial was going to be. I told her that the December setting,
> the trial setting, I believe, was going to be the second week in December. Although
> because December is a holiday month, it could be the first week. I wasn't sure.
> She could check the online website.

Jackson told Ferguson that he would keep in touch with her and would let her know the exact date of her trial, but had no contact with Ferguson after November 16 and was unable to reach her by

6

telephone despite his efforts. Jackson also stated, "I knew that she did not have a normal place of residence at that time, so I had nowhere to mail her any correspondence."

Billy Lehman, bailiff for the 4th Judicial District Court of Rusk County, Texas, testified that the court held a docket call on December 9, 2015. Lehman stated that, during docket calls, he displays paperwork through an overhead projector in the courtroom that includes a warning to defendants that failure to appear at any setting results in bond forfeiture. The paperwork also provides instructions on how to check the trial court's docket on the court's website.[3] However, neither Ferguson nor Jackson appeared for docket call. When Ferguson's case was called, attorney Johnathan Hyatt informed the trial court, "Your Honor, I'm supposed to be here on behalf of Mr. Jackson, and th[is] was not one of the cases I was told to announce on." The State responded, "[T]he State and Mr. Jackson's going to try that case next week." Following these brief announcements, the trial court said, "All right. Set for trial," but did not specify any trial date.[4]

Although the record contains no notice from the trial court of the trial setting, it appears that the underlying offense was specially set for trial on December 14, 2015. On that date, Jackson appeared and announced that he was not ready for trial because Ferguson was not present. Jackson stated, "Your Honor, as you know, this case was set for trial back in November. Defense was available and ready with the client at that time. Since that time, I have had little or no contact with

---

[3]During cross-examination, Lehman acknowledged that Ferguson may not have had access to the internet given her indigence.

[4]Lehman initially testified that the absence of any statement in the December 9 transcript indicating whether Ferguson was present meant that she was present, but later admitted that he could not determine whether she was present for docket call from the transcript, that he did not recall her being present on that date, and that there was no evidence in front of the jury that she was in the courtroom on December 9, 2015.

7

my client, although at that time, she knew that we had it reset for this date." By this statement, Jackson indicated that Ferguson knew of the December 14 trial setting when she was present for the November 9 hearing, although the transcript from that hearing established that the trial setting at that time was for November 16, and Jackson's testimony clarified he never informed Ferguson of the December 14 trial date. Based on Jackson's statement that Ferguson "knew that we had it reset for this date," the trial court stated, "The Court -- I believe we advised her in person of this setting," and ordered Ferguson's bond forfeited. Immediately afterword, Jackson clarified that Ferguson was never informed in person of the December 14 trial date, but was instead informed of the November 16 date on which the trial was continued. He added,

> We didn't actually come in on that November trial date. I personally gave notice to my client of this date *or* that the trial from November had been continued to the December setting, and that I would get in touch with her and let her know exactly when that date was, but to surely check the online calendar. However, we got word of that continuance . . . so we weren't admonished by this Court in person.

(Emphasis added). The trial court consulted its calendar and clarified, "[W]e set it for the next docket, and then it rolled to this docket. . . . That's the Court's mistake."

After reading the December 14 transcript, Jackson testified that there was nothing in the transcript indicating that Ferguson knew of the exact date of her trial. Lehman also testified that he had no knowledge of anyone telling Ferguson to appear for court on December 14 and that the transcripts from the November 9, December 9, and December 14 hearings constituted no evidence that Ferguson received notice of a December 14 trial date. Also, there is no evidence in the record suggesting that the trial court made an effort to notify Ferguson of her trial date.

8

Since the evidence established that neither her counsel nor the trial court notified Ferguson of the December 14 trial setting, the jury heard testimony as to whether Nick's Bail Bonds sent notice to Ferguson of her trial date. Nick Nelson, owner of Nick's Bail Bonds, testified that it was his duty to notify Ferguson of court dates.[5] Nelson unequivocally testified that he did not mail any notice to Ferguson notifying her of the December 14 trial date. Nelson explained his lack of effort by stating that previous notices sent to "1380 Kilgore Drive, Henderson, Texas 75652," were returned to him with a notation that Ferguson did not live at that address. Yet, he later admitted (1) that the address on Ferguson's bond was "1913 E. Main, Henderson, TX 75652,"[6] (2) that notices he sent to Ferguson at that address were not returned to him, but (3) that he wholly failed to send any written notice about the December 14 trial setting to the address on Ferguson's bond.

Gloria Olagus, secretary for Nick's Bail Bonds, testified that she notifies defendants of trial settings, but that she also did not send Ferguson any paperwork specifying the date of her trial. When asked whether she attempted to call Ferguson, Olagus stated, "If it was not a regular docket, I don't get notice of those hearings, special settings, I don't. So I would not."[7] Olagus then testified that even she did not have any notice of the December 14 trial setting.

---

[5]Nelson testified that his customers need to let him know of a change of address, but did not state that he specifically informed Ferguson to do that, and later admitted that he never met with Ferguson. Further, Ferguson's bond conditions did not require her to notify Nelson of a change of address in the conditions of her bond. In any event, it is uncontested that Nelson failed to mail notice of the December 14 trial setting to Ferguson.

[6]Article 17.08 of the Texas Code of Criminal Procedure requires that a bail bond, among other things, "be signed by name or mark by the principal and sureties, if any, each of whom shall write thereon his mailing address." TEX. CODE CRIM. PROC. ANN. art. 17.08(4).

[7]Nelson testified that he reached Ferguson's mother by telephone when he attempted to call Ferguson "about December dates," but that her mother had not spoken to Ferguson in a while, was angry with her, and did not know where she was. Nelson did not testify that he informed Ferguson's mother "about the court date." In fact, he never testified that he received notice of the special December 14 trial setting, but only that his attempted telephone calls

9

At that point in the trial, the evidence demonstrated that (1) no written notice of the December 14 trial setting was provided to Ferguson, either at the Kilgore Drive address or at the address listed on her bond, (2) that Ferguson was not notified of the trial setting by telephone, and (3) that Olagus did not have notice of the special December 14 trial setting. In an attempt to prove, beyond a reasonable doubt, that Ferguson's failure to appear in court on December 14 was intentional or knowing, the State introduced evidence of a Facebook message Nelson received from Ferguson in January 2016.

Nelson testified that after Ferguson missed her trial date, he posted photographs of her on Facebook letting social media know that she was a wanted person. When questioned about this Facebook post, the following transpired:

> Q.    [BY THE STATE]: Okay, Mr. Nelson. We were talking about the time period after the December court date. What was said to you by the defendant after the December court date?
>
> A.    She sent me a Facebook message that she was upset that I was putting a wanted picture of hers on Facebook and promoting it, so a bunch of people saw it. And then she admitted that she knew she had to be in court, but she couldn't make it. She had no way of getting here or anything, and that's pretty much it. I mean, there was more to it, but I can't remember everything word for word.
>
> Q.    So she admitted to you that she knew of the December trial date?
>
> A.    Yes, ma'am.

During cross-examination, Nelson testified that Ferguson was supposed to be in court for a docket call on January 14, 2016, and that he posted the Facebook message after Ferguson missed

were in reference to "December dates." Olagus' testimony established that she, as secretary for Nick's Bail Bonds who was responsible for contacting defendants, did not receive notice of the trial setting.

the January court date. When asked whether Ferguson was contacting him about missing the January court date, Nelson testified, "[S]he was referring to the Court date in December."

During its closing argument, the State did not argue that anyone mailed notice to Ferguson of her trial setting. Instead, using a theme of personal responsibility, the State argued that Ferguson should have checked the trial court's website to obtain notice of her trial setting. Ferguson's counsel pointed out that there was no evidence that Ferguson had access to the internet and no evidence that the date of Ferguson's trial had actually been updated and included on the trial court's website.

C.      Analysis

The State bore the burden to prove, beyond a reasonable doubt, that Ferguson's failure to appear in court on December 14 in accordance with the terms of her release was intentional or knowing. "Bail jumping is a result-of-conduct oriented offense because the crime is defined in terms of one's objective to produce a specific result." *Walker v. State*, 291 S.W.3d 114, 117 (Tex. App.—Texarkana 2009, no pet.). "The *mens rea* element of the offense modifies the conduct element of the offense, so it is the accused's conduct that must be done with the requisite 'intentional' or 'knowing' culpable mental state." *Id.* "A person acts intentionally, or with intent, with respect to the . . . result of his conduct when it is his conscious objective or desire to . . . cause the result." TEX. PENAL CODE ANN. § 6.03(a) (West 2011). "A person acts knowingly, or with knowledge, with respect to a result of his conduct when he is aware that his conduct is reasonably certain to cause the result." TEX. PENAL CODE ANN. § 6.03(b) (West 2011).

11

Because Ferguson's instanter bond was not prima facie evidence of actual notice to Ferguson of the December 14 trial setting, the State was required to prove that Ferguson had actual knowledge of the trial setting for the underlying offense.[8] *See Fish*, 734 S.W.2d at 743. Our rigorous legal sufficiency review must answer the question of whether the "evidence satisfies the highest standard of proof possible—beyond a reasonable doubt." *Brooks*, 323 S.W.3d at 915 (Cochran, J., concurring). Here, we find that the evidence does not satisfy this standard because we conclude that there was no evidence to prove, beyond a reasonable doubt, that Ferguson had actual notice of the December 14 trial setting.

The evidence at trial established that no one sent Ferguson a written notice of her trial date. Although people attempted to call Ferguson, no one was able to reach her. There was no evidence that Ferguson had access to the internet prior to the December 14 trial date. Moreover, there is no evidence that the December 14 special trial setting was included on the trial court's website. The only evidence speaking to whether Ferguson had actual notice of the trial setting came from Nelson's discussion of Ferguson's Facebook message, the actual content of which was not included in the appellate record.

When Nelson discussed this message with the jury, he told them that Ferguson "admitted that she knew she had to be in court." Nelson did not state whether Ferguson's message included the term "December" or whether it specifically referenced the December 9 docket call or the

---

[8]The State did not argue that Ferguson engaged in a course of conduct designed to prevent her from receiving notice. There was evidence that letters mailed to the address listed on Ferguson's bond were not being returned to the sender. No one bothered to send Ferguson notice of the trial setting by mail to that address. While the jury heard ample evidence that Ferguson was difficult to reach by telephone, the conditions of Ferguson's bond did not require that she update her telephone number or address.

December 14 trial setting.[9] When specifically asked whether Ferguson was contacting him about missing the January court date, Nelson testified, "She was referring to the Court date in December." However, Nelson did not state whether he was referring to the December 14 trial date, which Olagus had no notice of, or the December 9 docket call, which Nick's Bail Bonds had received notice of.[10] We are mindful that our review of the evidence must be conducted in the light most favorable to the jury's verdict, but we must not supply a bridge to the analytical gap in the evidence. Testimony that Ferguson "knew she had to be in court" in December, did not constitute proof beyond a reasonable doubt that she had knowledge that she had to be in court on December 14.

The only testimony offered to show that Ferguson had actual knowledge of the December 14 trial setting was Nelson's affirmative response to the State's question, "So she admitted to you that she knew of the December trial date?" We find the evidence lacking for one simple reason. The fact that Ferguson admitted that she knew of the December 14 trial date at the time she communicated with Nelson did not prove that Ferguson knew of the trial setting before December 14.

Because Ferguson's instanter bond did not name the court in which she was to appear, and since there was no other evidence indicating that Ferguson did have actual notice of the trial setting

---

[9]Nelson testified that he contacted Craig Sweeney, chief investigator of the Rusk County District Attorney's Office, via e-mail, "forwarded him an email of messages" regarding Ferguson's Facebook messages, and that the emails did not reference the December 14 trial date. Then, Nelson was asked the following multifarious question: "So, in fact, your contact and your testimony here today isn't about whether she admitted missing court in December. It's her admitting that she wasn't in court in January, but this trial isn't about January, is it?" In response, Nelson simply stated, "No."

[10]Nelson also failed to supply the basis for this statement.

13

before December 14 or that she engaged in a course of conduct designed to prevent her from receiving such notice, we hold that no rational trier of fact could have found that Ferguson intentionally and knowingly failed to appear in accordance with the terms of her release. *See Fish*, 734 S.W.2d at 433–44. Therefore, we hold that the evidence is legally insufficient to support the jury's finding that, beyond a reasonable doubt, Ferguson intentionally or knowingly failed to appear on December 14, 2015.[11]

## III.    Conclusion

We reverse the trial court's judgment and render judgment acquitting Ferguson of bail jumping and failure to appear on December 14, 2015.

Ralph Burgess
Justice

Date Submitted:      September 7, 2016
Date Decided:        October 27, 2016

Publish

---

[11]While we hold that it was unnecessary for Ferguson to bring forth a defense in this case because the State failed to meet its burden of production, we note that the statute also provides, "It is a defense to prosecution under this section that the actor had a reasonable excuse for h[er] failure to appear in accordance with the terms of [her] release." TEX. PENAL CODE ANN. § 38.10(c) (West 2011).

14