

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

No. 06-17-00093-CR

LLOYD LEROY WEBSTER, JR., Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 4th District Court
Rusk County, Texas
Trial Court No. CR16-121

Before Morriss, C.J., Moseley and Burgess, JJ.
Memorandum Opinion by Justice Moseley

# M E M O R A N D U M   O P I N I O N

A jury found Lloyd Leroy Webster, Jr., guilty of failing to comply with sex offender registration requirements and assessed a sentence of five and one-half years' imprisonment. In his sole point of error on appeal, Webster argues that the evidence is legally insufficient to support the jury's finding of guilt. Because we agree, we reverse the trial court's judgment and render a judgment of acquittal.

## I.     Standard of Review

In evaluating legal sufficiency, we review all the evidence in the light most favorable to the trial court's judgment to determine whether any rational jury could have found the essential elements of the offense beyond a reasonable doubt. *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010) (plurality op.) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)); *Hartsfield v. State*, 305 S.W.3d 859, 863 (Tex. App.—Texarkana 2010, pet. ref'd). Our rigorous legal sufficiency review focuses on the quality of the evidence presented. *Brooks*, 323 S.W.3d at 917–18 (Cochran, J., concurring). We examine legal sufficiency under the direction of the *Brooks* opinion, while giving deference to the responsibility of the jury "to fairly resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) (citing *Jackson*, 443 U.S. at 318–19); *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007).

Legal sufficiency of the evidence is measured by the elements of the offense as defined by a hypothetically correct jury charge. *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). The "hypothetically correct" jury charge is "one that accurately sets out the law, is authorized by

the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Id*. "The 'law as authorized by the indictment' consists of the statutory elements of the offense and those elements as modified by the indictment." *Thomas v. State*, 444 S.W.3d 4, 8 (Tex. Crim. App. 2014) (citing *Curry v. State*, 30 S.W.3d 394, 404 (Tex. Crim. App. 2000)).

A person commits the offense of failure to comply with registration requirements if the person "is required to register and . . . fails to comply with any requirement" of Chapter 62 of the Texas Code of Criminal Procedure. *Crabtree v. State*, 389 S.W.3d 820, 825 (Tex. Crim. App. 2012) (citing TEX. CODE CRIM. PROC. ANN. art. 62.102(a)). Under Article 62.051,

> (a) A person who has a reportable conviction or adjudication or who is required to register . . . shall register . . . with the local law enforcement authority in any municipality where the person resides or intends to reside for more than seven days. If the person does not reside or intend to reside in a municipality, the person shall register or verify registration in any county where the person resides or intends to reside for more than seven days.

TEX. CODE CRIM. PROC. ANN. art. 62.051(a) (West Supp. 2016). The indictment alleges that on or about March 3, 2016, Webster,

> did then and there[,] while knowing that he was required to register with the local law enforcement authority in the county where the defendant resided or intended to reside for more than seven days, to-wit: Rusk County, because of a reportable conviction for Sexual Assault, the defendant failed to register with the local law enforcement authority in the county.

Therefore, the hypothetically correct jury charge in this case required the State to prove that: (1) on or about March 3, 2016, (2) Webster (3) resided or intended to reside for more than seven days in Rusk County, Texas; (4) was, thus, a person required to register with the local law

3

enforcement authority in the county (5) because of a reportable conviction for sexual assault; and (6) failed to register. *See Simpkins v. State*, 300 S.W.3d 860, 863 (Tex. App.—Texarkana 2009, no pet.) (reciting the elements of an offense under Article 62.051(a)). "Due to the multiplicity of registration entities (depending on the situs of [Webster's] residence or intended residence), the State also had to prove the elements which established the identity of the law enforcement entity with which he was required to register." *Id.* (citing TEX. CODE CRIM. PROC. ANN. art. 62.001(2) (Vernon 2009)); *see also* TEX. CODE CRIM. PROC. ANN. art. 62.051(j) (West Supp. 2016).

## II.     The Evidence at Trial

It is undisputed that Webster was convicted of sexual assault and had a lifetime duty to register as a sex offender. Dixie Duncan, the receptionist for the Rusk County Sheriff's Office, testified that she is responsible for registering sex offenders. According to Duncan, low-risk individuals like Webster were required to check in with a local law enforcement agency annually and update her with any changes in their address. Webster registered with Duncan until he moved to Oklahoma in 2012 and his registration paperwork was transferred to that State.

Duncan learned that at some point, Webster was incarcerated in Huntsville, Texas. While in prison, Webster filled out a pre-release form, which stated that he "expect[ed] to reside" at H&H RV Park, Highway 79 South, Henderson, Texas 75653.[1] However, instead of notifying Webster where he was to personally appear and register, the pre-release form stated only that he was to "REGISTER AT LOCAL LAW ENFORCEMENT AGENCY IN AREA THAT YOU INTEND

---

[1]Webster did not include a lot number for his expected address at the trailer park.

4

TO RESIDE." The spaces on the form designed to inform Webster of the specific law enforcement agency's name and address were left blank.

Nevertheless, Duncan testified that she received the pre-release paperwork from Huntsville indicating that Webster expected to reside in Rusk County, and she concluded that Webster had seven days after his release from prison to register with her. On the pre-release form, Webster also indicated his understanding that he was to register as a sex offender within seven days after the date of his release, which was February 26, 2016. On March 3, 2016, two days before the registration deadline, Duncan became concerned that Webster had not yet registered with her and asked Russell Smith, a sergeant with the Rusk County Sheriff's Office, to locate Webster.

Smith testified that he spoke with Webster's mother, Beverly Webster, who verified that Webster was living with her. Smith asked Beverly to inform Webster that he had two days to meet his registration deadline. Critically, Smith failed to confirm Beverly's address, and had instead assumed she was living in the trailer park listed on the pre-release form.

When Webster's deadline to register passed, Smith sent Deputy Jeremy Whaley to the trailer park to find him. Whaley testified that he was instructed by dispatchers that Webster "would be residing at the second trailer house or the second trailer on the left in H&H Park." Whaley knocked on the door of the trailer, but stated that no one answered. Whaley left after confirming that there was no movement in the trailer. Both Smith and Whaley testified they did not know why dispatchers directed Whaley to the second lot in the trailer park.

Smith admitted that if Webster was not living in Rusk County, he did not have a duty to register with the Rusk County Sheriff's Office. Virginia Williams, who was once married to

5

Webster's uncle, testified that Webster was living with Beverly at 329 Lula Lane in Jefferson, Texas, which is in Marion County. Williams, who also lived on Lula Lane, testified that Webster moved to the street at some point in March 2016, after he was released from prison.

On May 2, 2016, an indictment was filed in this case. Capias was issued, and the sheriff's return demonstrated that Webster was arrested on May 3 in Gregg County. Webster's book-in information, filled out on May 13, 2016, and bond paperwork both listed 329 Lula Lane as his address.

Webster was in the Rusk County jail until May 16, 2016. Duncan testified that Webster came into her office on May 19, 2016, "to deregister" because he had already moved to Marion County. According to Duncan, the Texas Department of Public Safety's website, which recorded all of the times Webster registered in the State of Texas, demonstrated that Webster had not registered with any local law enforcement authority since he left Huntsville. Webster first registered with the Marion County Sheriff's Office on May 21, 2016.

After hearing this evidence, the jury concluded that Webster had failed to register as a sex offender in Rusk County, as alleged in the State's indictment.

III.    Analysis

The location of a defendant's residence, or evidence establishing that a defendant intended to reside in a place for more than seven days, is a critical element of the offense alleged by the State in this case. The address supplies the information required to assess the defendant's duty to register with a particular law enforcement authority. For example, "[a] person is required to register 'with the local law enforcement authority in any municipality where he resides or intends

6

to reside for more than seven days' if he has a 'reportable conviction or adjudication.'" *Crabtree*, 389 S.W.3d at 825 (quoting TEX. CODE CRIM. PROC. ANN. art. 62.051(a)). On the other hand, "[i]f the person does not reside or intend to reside in a municipality, the person shall register or verify registration in any county where the person resides or intends to reside for more than seven days." TEX. CODE CRIM. PROC. ANN. art. 62.051(a). "'Local law enforcement authority' means, as applicable, the office of the chief of police of a municipality, the office of the sheriff of a county in this state, or a centralized registration authority." TEX. CODE CRIM. PROC. ANN. art. 62.001(2) (West Supp. 2016). Here, the State had to prove, beyond a reasonable doubt, that Webster had a duty to register with the Rusk County Sheriff's Office.

Webster argues that the evidence is legally insufficient to demonstrate that he resided in Rusk County or intended to reside in Rusk County for more than seven days after his release from prison. Alternatively, he argues that the State failed to prove that Webster was residing within the city limits of Henderson, Texas, which would have required him to register within the municipality of the City of Henderson, instead of with the Rusk County Sheriff's Office. Accordingly, Webster argues that evidence failed to prove that he had a duty to register with the Rusk County Sheriff's Office.

The State contends that the pre-release form supplied proof that Webster resided in Rusk County or intended to reside in Rusk County for more than seven days. However, the pre-release form merely asked Webster to list where he "expected" to reside upon release from prison. While the form may have provided evidence of where Webster intended to reside, nothing on it

7

demonstrated that after his release from prison, he actually resided or intended to reside there the requisite *seven days*, as required by Article 62.051(a).

Next, the State argues that Duncan's testimony supplied proof that Webster lived in Rusk County after his arrest. We disagree. Duncan testified that after Webster's arrest in Gregg County on the indictment in this case, he went to Duncan to "deregister" and told her that he had moved to Marion County. Relying on Duncan's testimony, the State argues that it showed that Webster had only recently moved to Marion County. However, Duncan never testified either that Webster, who was arrested in Gregg County, (a) said he moved from Rusk County or (b) that Webster actually lived in Rusk County after his release from prison.[2] Furthermore, according to Smith, Beverly confirmed that Webster was residing with her on March 3, 2016, which was prior to the expiration of the deadline to register, Williams testified that Webster had moved into Beverly's Marion County home after his release from prison, and Webster's book-in sheet listed the Marion County address as his residence on May 3, 2016.

The total of the State's evidence in this case asked the jury to assume that Webster resided at H&H RV Park or intended to reside there for more than seven days because (1) he filled out a pre-release form while in prison stating that he "expect[ed]" to live there once released, and (2) told Duncan that he had moved to Marion County. The evidence presented in this case could not lead to a rational inference that Webster resided or intended to reside in Rusk County for more than seven days. "We are mindful that our review of the evidence must be conducted in the light most

---

[2]We also note that the State relies on arguments applicable to different provisions of Chapter 62, but that the State actually indicted Webster for an offense under Section 62.051(a).

8

favorable to the jury's verdict, but we must not supply a bridge to the analytical gap in the evidence." *Ferguson v. State*, 506 S.W.3d 113, 121 (Tex. App.—Texarkana 2016, no pet.). This is because "[i]f the evidence at trial raises only a suspicion of guilt, even a strong one, then that evidence is insufficient [to convict]." *Winfrey v. State*, 323 S.W.3d 875, 882 (Tex. Crim. App. 2010) (quoting *Urbano v. State*, 837 S.W.2d 114, 116 (Tex. Crim. App. 1992), *superseded in part on other grounds*, *Herrin v. State*, 125 S.W.3d 436, 443 (Tex. Crim. App. 2002)). On this record, we find that the State failed to prove, beyond a reasonable doubt, that Webster resided in Rusk County or intended to reside in Rusk County for more than seven days after his release from Huntsville. Accordingly, we sustain Webster's sole point of error.

Additionally, even assuming that Webster resided at the address located on the release form, the State was still required to prove that he had a duty to register with the Rusk County Sheriff's Office. Webster argues that the State failed to meet this burden. This Court addressed a similar argument in *Simpkins*, where we required proof of whether a defendant resided or intended to reside within a municipality or in a rural area "[d]ue to the differences between the places a person is required to register, depending upon the location of the registrant's residence." *Simpkins*, 300 S.W.3d at 864. In *Simpkins*, we stated that "[a]bsent such evidence, there is no proof that [a defendant] failed to register where he was required to register." *Id.* In that case, because Simpkins resided in the City of Longview, and there was no proof that he resided in a rural part of Gregg County, we determined that the State failed to prove that Simpkins was required to register with the Gregg County Sheriff's Office, as opposed to the Longview Police Department. *Id.* Accordingly, we held that the State had failed to meet its burden of proof and concluded the

9

evidence legally insufficient to support Simpkins' conviction for failing to register as a sex offender. *Id.* at 865.

Here, the address listed on Webster's pre-release form indicated that he expected to live in the City of Henderson. At trial, there was no testimony that proved, beyond a reasonable doubt, that the address listed on the pre-release form was actually in a rural part of Rusk County.[3] Thus, as in *Simpkins*, we find the evidence legally insufficient to establish that Webster resided or intended to reside in a rural part of Rusk County after his release from Huntsville.

## IV. Conclusion

We reverse the trial court's judgment and render a judgment of acquittal.

Bailey C. Moseley
Justice

Date Submitted: August 14, 2017
Date Decided: November 1, 2017

Do Not Publish

---

[3]Duncan merely opined that if Webster "was moving into the City of Henderson, [the pre-release] would have been sent to the City of Henderson and not Rusk County." Neither she, nor any other witness, testified that H&H RV Park was actually in a rural part of Rusk County.