

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

No. 06-18-00058-CR

LATOYA SAKEITHA ERWIN, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 114th District Court
Smith County, Texas
Trial Court No. 114-1352-17

Before Morriss, C.J., Burgess and Stevens, JJ.
Opinion by Chief Justice Morriss
Concurring Opinion by Justice Burgess

# OPINION

Latoya Sakeitha Erwin was convicted in a bench trial in Smith County[1] of exploitation of an elderly individual. *See* TEX. PENAL CODE ANN. § 32.53(b) (West 2016). The trial court sentenced Erwin to ten years' imprisonment, but suspended the sentence in favor of placing her on community supervision for six years. In her sole point of error on appeal, Erwin argues that the evidence is legally insufficient to support her conviction. We agree. Accordingly, we reverse the judgment of conviction and render a judgment of acquittal.

In evaluating legal sufficiency of the evidence, we review all the evidence in the light most favorable to the trial court's judgment to determine whether any rational jury could have found the essential elements of the offense beyond a reasonable doubt. *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010) (plurality op.) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)); *Hartsfield v. State*, 305 S.W.3d 859, 863 (Tex. App.—Texarkana 2010, pet. ref'd). We examine legal sufficiency under the direction of the *Brooks* opinion, while giving deference to the responsibility of the jury "to fairly resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) (citing *Jackson*, 443 U.S. at 318–19); *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007).

Legal sufficiency of the evidence is measured by the elements of the offense as defined by a hypothetically correct jury charge. *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997).

---

[1]Originally appealed to the Twelfth Court of Appeals, this case was transferred to this Court by the Texas Supreme Court pursuant to its docket equalization efforts. *See* TEX. GOV'T CODE ANN. § 73.001 (West 2013). We follow the precedent of the Twelfth Court of Appeals in deciding this case. *See* TEX. R. APP. P. 41.3.

The "hypothetically correct" jury charge is "one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Id.*

Here, the State alleged that Erwin, on or about November 10, 2016, "did then and there, for monetary or personal benefit, profit or gain, intentionally and knowing[ly] cause the exploitation of Betty Callier [(Betty)], an elderly person, by the illegal or improper use of the resources of the elderly person by withdrawing funds from Betty Callier's bank account." Thus, to obtain a conviction, the State was required to prove beyond a reasonable doubt that, on or about November 10, 2016, (1) Erwin, (2) for monetary or personal benefit, profit, or gain, (3) intentionally, knowingly, or recklessly (4) caused the exploitation of (5) Betty, an elderly person, (6) by the illegal or improper use (7) of funds from her bank account.[2]

The evidence at trial established that Erwin and her friend, Jameel Thompson, worked for "KD's Auto Sales," owned by a man named Kelly Key. On November 9, 2016, Key executed a check on behalf of KD's Auto Sales to Thompson for $684.24 on the business' JPMorgan Chase Bank account. Erwin and Thompson asked Erwin's grandmother, Betty, to deposit Thompson's payroll check into her bank account so they could withdraw the money for the check. According to Erwin's uncle, Ricky Callier (Ricky), Erwin claimed she needed $400.00 for her car payment. Betty agreed to the arrangement, and the check was deposited into her account November 10.

---

[2]Our sister court has held that a jury charge which submits a mental state not alleged in the State's indictment is erroneous. *Johnson v. State*, 797 S.W.2d 330, 332 (Tex. App.—Tyler 1990, no pet.). Nevertheless, for the purposes of our analysis, we will review all three mental states referenced in the statute of offense.

Ricky testified that, because he held Betty's bank card for her, Erwin and Thompson asked him to use the bank card to withdraw $400.00, the then-existing withdrawal limit.[3] After obtaining Betty's express permission, Ricky used the bank card on November 10 to withdraw the $400.00 and handed it to Erwin. Thompson returned to Betty's home that evening to ask for the remaining funds, which Ricky withdrew and tendered to Erwin. The following day, Ricky and Betty learned that "the check was no good." On November 15, Betty's bank returned the check because the account had been closed. According to Ricky, Betty absorbed the loss for the bad check.

Testimony from Royce Jordan, an investigator with the Tyler Police Department, and KD's Auto Sales' JPMorgan Chase Bank account records both established that the account was open and had a balance of over $1,100.00 when Key executed the check on November 9, but that the account was closed by Key on November 10. Jordan testified that Key had a bad reputation and was known to pass bad checks and engage in fraudulent activity. Nevertheless, Jordan testified that the police department did not investigate Key.

Ricky testified that Erwin and Thompson identified Key as the person who wrote the bad check and claimed that Betty would get her money back. Ricky testified that he confronted Key, who gave him $250.00 to give to Betty. When asked if Erwin had anything to do with the bad check, Ricky testified, "[S]he didn't have nothing to do with it." Betty, who was eighty-four at the time of trial, testified that Erwin was not guilty and would not have brought Thompson to her

---

[3]Over objection, Ricky testified that Thompson said he was owed $300.00 and that Erwin claimed the check was made out for $684.24 because she needed money for her car payment.

home if she had known that the check was bad. Betty opined that perhaps Thompson had lied to Erwin.

Jordan testified that he was unaware of whether Erwin had any knowledge that the check was bad before Betty's bank returned the check, but that Erwin attempted to pass the same check at a Texaco gas station on November 16. Jordan testified that, according to another reporting officer, Key acted "offended that his employee, Ms. Erwin, . . . couldn't cash her check" at the Texaco.

The State introduced Jordan's recorded interview with Betty, in which Betty said Erwin pushed her to complete the transaction and "had to have at least 85% in this deal because [Thompson] don't know me, I don't know [him]." Betty also said she confronted Erwin when the check was returned and that she lied by promising Betty she would make sure that the "boys" responsible would repay the money. As a result of that interview, Jordan opined that Betty believed Erwin "got a cut in it, and that she had to fix this." Jordan said that, because Erwin admitted to passing the check on November 15 at the Texaco, he believed she was trying to profit from a scheme.[4]

In response to Erwin's legal sufficiency complaint, the State argues that Erwin's "urgency in convincing her grandmother to deposit the check, attempt to cash the check after it was returned . . . , [and] testimony that she needed $400 for a car payment" and Betty's statement that she

---

[4]Jordan testified that the address for KD Auto Sales was a residence, but did not testify whether it belonged to Key or someone else.

believed Erwin "to have at least 85% in this deal" constituted evidence from which a rational fact-finder could infer Erwin's guilt. We disagree.

"[A] culpable mental state generally can be established only by inferences from the acts, words, and conduct of the accused." *Carson v. State*, 422 S.W.3d 733, 743 (Tex. App.—Texarkana 2013, pet. ref'd). In determining a defendant's intent, "we should look at 'events occurring before, during and after the commission of the offense and may rely on actions of the defendant which show an understanding and common design to do the prohibited act.'" *Wirth v. State*, 361 S.W.3d 694, 697 (Tex. Crim. App. 2012) (quoting *Guevara v. State*, 152 S.W.3d 45, 49 (Tex. Crim. App. 2004). However, a fact-finder is "not permitted to come to conclusions based on mere speculation or factually unsupported inferences or presumptions." *Hooper*, 214 S.W.3d at 16. "A conclusion reached by speculation may not be completely unreasonable, but it is not sufficiently based on facts or evidence to support a finding beyond a reasonable doubt." *Id.*

"We are mindful that our review of the evidence must be conducted in the light most favorable to the [fact-finder's] verdict, but we must not supply a bridge to the analytical gap in the evidence." *Ferguson v. State*, 506 S.W.3d 113, 121 (Tex. App.—Texarkana 2016, no pet.). This is because, "[i]f the evidence at trial raises only a suspicion of guilt, even a strong one, then that evidence is insufficient [to convict]." *Winfrey v. State*, 323 S.W.3d 875, 882 (Tex. Crim. App. 2010) (quoting *Urbano v. State*, 837 S.W.2d 114, 116 (Tex. Crim. App. 1992), *superseded in part on other grounds by Herrin v. State*, 125 S.W.3d 436, 443 (Tex. Crim. App. 2002)).

The evidence at trial unequivocally established that the check deposited into Betty's account was covered by adequate funds when executed. No evidence demonstrated that Erwin

6

knew or suspected that the check would be bad at the time of the offense. A finding that Erwin knew or suspected that Key would close the JPMorgan Chase account based on her alleged "urgency" in depositing the check constitutes an unreasonable inference, especially in light of testimony establishing her need to make a car payment. Betty's statement that she believed Erwin "had to have at least 85% in this deal" and Jordan's repetition of that stated belief constituted only speculation since it was unsupported by facts or otherwise explained. Although Erwin's later attempt to cash the check on November 16 was a subsequent bad act, that subsequent extraneous offense fails to demonstrate that she had the required mens rea on the earlier date of this offense since the check was good when executed, and no evidence showed her knowledge that Key had closed the bank account at the time of the alleged offense.[5] *See Kuykendall v. State*, 160 S.W.2d 525, 526–27 (Tex. Crim. App. 1942) (concluding there was no evidence to support finding of intent to defraud in executing check returned for insufficient funds on December 16 where

---

[5]The State cites *Parks v. State*, 746 S.W.2d 738, 741 (Tex. Crim. App. 1987), and *Landry v. State*, 583 S.W.2d 620, 622 (Tex. Crim. App. 1979), for the proposition that extraneous offenses committed after the charged offense can be probative of intent. Both cases held admissible extraneous acts showing that the defendant had committed the same crimes for the purpose of proving mens rea. *See Parks*, 746 S.W.2d at 741; *Landry*, 583 S.W.2d at 622. In *Parks*, evidence of extraneous acts showing the defendant had forged signatures was admissible in a subsequent forgery case. *Parks*, 746 S.W.2d at 741. In *Landry*, evidence that the defendant attempted to cash checks made out to someone else was admissible to show the defendant had made the same attempt at another bank. *Landry*, 583 S.W.2d at 621–22. Neither case held the evidence legally sufficient based on the extraneous offenses since (1) testimony from the victims of the forgeries in *Parks* established that their signatures were not affixed to the documents at issue and (2) the bank tellers in *Landry* testified to the defendant's attempts to cash someone else's check. *Parks*, 746 S.W.2d at 739; *Landry*, 583 S.W.2d at 621. Here, the extraneous act of attempting to pass the check at the Texaco does not demonstrate that Erwin had the intent to exploit her grandmother since the check was covered by sufficient funds on the day it was signed by Key, and nothing shows Erwin knew or suspected otherwise on the date of this alleged offense.

7

defendant signed the checks on December 3 and 10, and testimony showed they would have been paid with sufficient funds if timely presented).[6]

Taken together, even when viewed in the light most favorable to the verdict, the evidence established only a mere suspicion of guilt. Therefore, we sustain Erwin's point of error arguing that the evidence is legally insufficient to prove, beyond a reasonable doubt, that Erwin had a culpable mental state to exploit Betty by the illegal or improper use of her bank account.

Since the evidence here is insufficient to prove any culpable mental state, we reverse the judgment of conviction and render a judgment of acquittal. *See Britain v. State*, 412 S.W.3d 518, 521, 522–23 (Tex. Crim. App. 2013) (with no evidence of culpable mental state, reformation of conviction to lesser offense is not required); *see also Thornton v. State*, 425 S.W.3d 289, 299 (Tex. Crim. App. 2014).

Josh R. Morriss, III
Chief Justice

CONCURRING OPINION

I concur with the majority opinion. However, this case is unusual because there is some evidence in the record to support each essential element of the offense charged, yet the evidence

---

[6]*See also Holley v. State*, No. 07-07-0375-CR, 2008 WL 3540184, at *4 (Tex. App.—Amarillo Aug. 14, 2008, no pet.) (mem. op., not designated for publication) (finding evidence legally insufficient to support theft conviction because "the State offered no evidence that at the time of the taking, Appellant knew he was issuing a check on a closed account"). Although this unpublished case has no precedential value, we may take guidance from it "as an aid in developing reasoning that may be employed." *Carrillo v. State*, 98 S.W.3d 789, 794 (Tex. App.—Amarillo 2003, pet. ref'd).

is nevertheless insufficient under the *Jackson v. Virginia* standard of legal sufficiency review. *Jackson v. Virginia*, 443 U.S. 307 (1979). I write separately to explain why I believe the majority's decision in this case is consistent with *Jackson*.

In *Jackson*, the United Supreme Court held that, in legal sufficiency review,

[t]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.

*Id.* at 318–19.

In the present case, the majority states,

A finding that Erwin knew or suspected that Key would close the JPMorgan Chase account based on her alleged "urgency" in depositing the check constitutes an unreasonable inference, especially in light of testimony establishing her need to make a car payment. Betty's statement that she believed Erwin "had to have at least 85% in this deal" and Jordan's repetition of that stated belief constituted only speculation since it was unsupported by facts or otherwise explained. Although Erwin's later attempt to cash the check on November 16 was a subsequent bad act, that subsequent extraneous offense fails to demonstrate that she had the required mens rea on the earlier date of this offense since the check was good when executed, and no evidence showed her knowledge that Key had closed the bank account at the time of the alleged offense.

Thus, the majority acknowledges that there is some evidence in the record upon which the jury could infer that Erwin "knew or suspected that Key would close the JPMorgan Chase account," but it finds that the evidence is nevertheless insufficient because that inference would be unreasonable. Based on a simple reading of the above-quoted portion of *Jackson*, it might appear that the majority's analysis goes too far. Yet, when *Jackson* is read in context with previous

9

Supreme Court rulings leading up to *Jackson*, it becomes clear that the majority appropriately applied the *Jackson* standard here.

Nineteen years before *Jackson*, the Supreme Court decided the case of *Thompson v. City of Louisville*, 362 U.S. 199, 199–201 (1960). In *Thompson*, the appellant was arrested, charged, and convicted of the offense of loitering. *Id*. The Supreme Court reversed the loitering conviction, holding that "[t]here simply is no semblance of evidence from which any person could reasonably infer that petitioner could not give a satisfactory account of himself or that he was loitering or loafing there . . . without 'the consent of the owner or controller' of the café." *Id*. at 205. The Supreme Court concluded, "Just as 'Conviction upon a charge not made would be sheer denial of due process,' so is it a violation of due process to convict and punish a man without evidence of his guilt." *Id*. at 206 (quoting *DeJonge v. State of Oregon*, 299 U.S. 353, 362 (1937)). Because it held that that standard is a component of due process, it is therefore applicable to both state and federal convictions. *Id*.

Ten years after *Thompson*, the Supreme Court decided *In re Winship*, 397 U.S. 358, 364 (1970). In *Winship*, the trial court found a juvenile had committed a delinquent act in violation of New York law that, "if done by an adult, would constitute the crime or crimes of Larceny." *Id*. The trial court based its verdict on its finding that the State proved the delinquency by a preponderance of the evidence, as required by New York law. *Id*. at 364 n.2. The Supreme Court reversed the adjudication and held, "Lest there remain any doubt about the constitutional stature of the reasonable-doubt standard, we explicitly hold that the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary

10

to constitute the crime with which he is charged." *Id*. at 364 (citing *Coffin v. United States*, 156 U.S. 432, 453 (1895)). The Supreme Court noted,

> The reasonable-doubt standard plays a vital role in the American scheme of criminal procedure. It is a prime instrument for reducing the risk of convictions resting on factual error. The standard provides concrete substance for the presumption of innocence—that bedrock "axiomatic and elementary" principle whose "enforcement lies at the foundation of the administration of our criminal law."

Nine years after *Winship*, the Supreme Court decided *Jackson*. In *Jackson*, the appellant was convicted of murder in Virginia state court, and his petition for review to the Virginia Supreme Court was denied. *Jackson*, 443 U.S. at 311. Appellant then sought federal habeas relief in the United States District Court for the Eastern District of Virginia. *Id*. at 312. The federal district court granted the writ, finding that "the record [was] devoid of premeditation." *Id*.

The United States Court of Appeals for the Fourth Circuit reversed the district court's judgment based on "the same 'no evidence' criterion of *Thompson v. Louisville* that the District Court had adopted." *Id*. Although it questioned the applicability of that standard in light of *Winship*, the Fourth Circuit Court of Appeals held that the evidence was sufficient to support the conviction because the record contained "some evidence that the [appellant] had reloaded his gun after firing warning shots, that he had had time to do so, and that the victim was then shot not once, but twice" and that "the state trial judge could have found that the [appellant] was not so intoxicated as to be incapable of premeditation." *Id*. Essentially, the Fourth Circuit concluded that, because a conviction based on "no evidence" is unconstitutional under *Thompson*, then it logically follows that a conviction based on "some evidence" is constitutional.

11

The Supreme Court rejected the Fourth Circuit's analysis. *Id.* It first noted that, according to *Winship*, "[t]he Constitution prohibits the criminal conviction of any person except upon proof of guilt beyond a reasonable doubt." *Id.* at 309 (citing *Winship*, 397 U.S. at 364). The Supreme Court then noted that the "due process right at issue [in *Thompson*] did not concern a question of evidence 'sufficiency'" and concluded that "[t]he right established in *In re Winship* . . . clearly stands on a different footing" from *Thompson* because the "record in *Winship* was not totally devoid of evidence of guilt." *Jackson*, 443 U.S. at 314–15. The Supreme Court concluded that the *Thompson* no evidence standard was insufficient to comply with the due process requirement of proof beyond a reasonable doubt in cases where there was some evidence to support each of the elements of the offense charged. *Id.* at 320. The Supreme Court reasoned,

> That the *Thompson* "no evidence" rule is simply inadequate to protect against misapplications of the constitutional standard of reasonable doubt is readily apparent. "[A] mere modicum of evidence may satisfy a 'no evidence' standard . . . ." *Jacobellis v. Ohio*, 378 U.S. 184, 202, 84 S.Ct. 1676, 1686, 12 L.Ed.2d. 793 (Warren, C.J., dissenting). Any evidence that is relevant—that has any tendency to make the existence of an element of a crime slightly more probable than it would be without the evidence . . . —could be deemed a 'mere modicum.' But it could not seriously be argued that such a 'modicum' of evidence could by itself rationally support a conviction beyond a reasonable doubt. The *Thompson* doctrine simply fails to supply a workable or even a predictable standard for determining whether the due process command of *Winship* has been honored.

*Id.* (alteration in original)

The Supreme Court then concluded,

> After *Winship* the critical inquiry on review of the sufficiency of the evidence to support a criminal conviction must be . . . whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt. . . . [T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the

12

crime beyond a reasonable doubt. This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts . . . The criterion thus impinges upon "jury" discretion only to the extent necessary to guarantee the fundamental protection of due process.

*Id*. at 318–19. Consequently, in *Jackson*, the Supreme Court held that, even though "no evidence" renders a conviction unconstitutional, the presence of "some evidence" does not automatically render it constitutional. Rather, the evidence must be such that "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id*.; *see also Lang v. State*, 561 S.W.3d 174, 179 (Tex. Crim. App. 2018) (citing *Jackson*, 443 U.S. at 319).

Obviously, in cases where there is a complete absence of evidence to support one or more of the essential elements of the offense charged, the evidence is insufficient under *Jackson*, because in that event, no "rational juror could have found the essential elements of the offense beyond a reasonable doubt." *Jackson*, 443 U.S. at 319. But what about a case like this one where there is some evidence to support each essential element of the offense charged? If an appellate court reverses a conviction despite the presence of some evidence in the record supporting each essential element of the offense charged, one can always question whether the appellate court truly gave "full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Id*.

Yet, because *Jackson* holds that the presence of "some evidence" is not automatically sufficient to support a conviction, it necessarily follows that there will be some cases—as here— where the State can point to "some evidence" in the record to support each element of the offense charged, but the evidence is still insufficient because it does not rise to the level of proof beyond

13

a reasonable doubt.[7]  In such cases, the appellate court does not violate the *Jackson* standard by reversing the conviction, it complies with it.  To hold otherwise would require appellate courts to affirm convictions whenever there is some evidence in the record to support each essential element of the offense charged, or in other words, to apply the *Thompson* "no evidence" standard that was specifically held to violate due process in *Jackson*.

Because *Jackson* requires a reviewing court to evaluate whether the "some evidence" in the record is such that "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt," and because the evidence in this case does not rise to that level, I join in the majority opinion.  *Jackson*, 443 U.S. at 319.[8]

Ralph K. Burgess
Justice

Date Submitted:        April 19, 2019
Date Decided:          April 24, 2019

Publish

---

[7]The Texas Court of Criminal Appeals has reached the same conclusion.  *See Butler v. State*, 769 S.W.2d 237–39 (Tex. Crim. App. 1989) (noting that, after *Thompson*, "[t]he constitutional import was to find a due process violation only where there was no evidence but the jury still rendered a guilty verdict," but that "[a]dherence to the no evidence standard is now, and has been for the last decade, expressly forbidden by *Jackson*"), *overruled on other grounds by Geesa v. State*, 820 S.W.2d 154 (Tex. Crim. App. 1991), *overruled by Paulson v. State*, 28 S.W.3d 570 (Tex. Crim. App. 2000).

[8]In their treatise, Professors Dix and Schmolesky observe that, "[g]enerally, evidence is likely to be found insufficient only if the reviewing court finds no evidence whatsoever bearing upon at least one element of the crime."  *See* 43A George E. Dix, et al., *Texas Practice Series:  Criminal Practice & Procedure*, § 51.52 (3rd ed. 2011)).  If accurate, this observation suggests that Texas appellate courts may actually be applying the *Thompson* standard notwithstanding citations to *Jackson*.